**Roger THOMPSON and Phyllis Thompson, Plaintiffs and Appellees,**

v.

**William GOETZ, Defendant and Appellant.**

**Civ. No. 890281.**

Supreme Court of North Dakota.

May 14, 1990.

Wheeler Wolf, Bismarck, for plaintiffs and appellees; argued by William D. Schmidt.

James L. Norris (argued), Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

William Goetz appeals from an order denying his Rule 60(b), N.D.R.Civ.P., motion to vacate a default judgment granted in favor of Roger and Phyllis Thompson. We treat the appeal as a petition for exercise of our supervisory jurisdiction, grant the supervisory writ, and direct the district court to vacate the default judgment.

Goetz served as the Thompsons' lawyer for a number of years, assisting them with legal matters pertaining to their business and farming operations as well as their personal affairs. On November 10, 1988, the Thompsons brought a lawsuit against Goetz.

Count I of the complaint seeks $390,000 in damages for legal malpractice. The Thompsons allege that between 1985 and 1987, Goetz represented them in an action brought against them by the First National Bank of Hettinger [Bank] to foreclose real estate and chattel mortgages the Bank had on their land, cattle, and machinery. The Thompsons allege that Goetz agreed to process an application for Small Business Administration [SBA] disaster program benefits and that those benefits were to be used to refinance their loans from the Bank. According to the Thompsons, after their application was initially denied by the SBA, Goetz agreed to appeal that decision for them but failed to do so. The Thompsons allege that "[a]s a direct and proximate result of [Goetz's] failure to process the

appeal with regard to [their] application for SBA disaster benefits, [they] have been damaged to the extent that they are no longer eligible for consideration for said program in an amount equal to the application amount of $390,000."

Count II of the complaint seeks an unspecified amount of compensatory and punitive damages for "fraudulent misrepresentations." The Thompsons allege, among other things, that Goetz told them they needed to sign certain documents to accompany the SBA application which would establish their ownership interests in the farm, cattle, and machinery. According to the Thompsons, after executing the documents they discovered that the papers consisted of a stipulation dismissing their bankruptcy petition and a warranty deed and bill of sale transferring title to their land, cattle, and machinery to the Bank.

Count III of the complaint seeks compensatory damages for breach of contract. The Thompsons allege that in July 1988, they entered into an agreement with Goetz to settle their claims against him. According to the Thompsons, although Goetz made one payment due under the terms of the agreement, he has failed to make other payments due and meet other conditions of the contract. The Thompsons seek "damages equal to the amount [Goetz] was obligated to pay in connection with said agreement."

Goetz did not answer the complaint.

On January 6, 1989, the Thompsons filed a motion for default judgment pursuant to Rule 55, N.D.R.Civ.P. The trial court determined that Goetz, through counsel who subsequently withdrew as his counsel, had made an appearance and directed the Thompsons' counsel to provide Goetz at least eight days written notice of the application for judgment. On January 24, 1989, the Thompsons filed an amended motion for default judgment. The Thompsons requested that the trial court "enter judg-

ment against the defendant determining that the defendant is liable for the damages sought in Counts I, II and III. Further, plaintiffs move the court for an order setting a hearing for the sole purpose of determining the amount of damages sustained by the plaintiffs." Although an affidavit of default was filed with the amended motion, no affidavit of proof was filed.[1] On February 6, 1989, judgment was entered finding Goetz "liable for the relief sought" in counts I, II, and III of the complaint and ordering that a hearing be held pursuant to Rule 55(a)(2), N.D.R. Civ.P., "for the purpose of hearing the evidence and assessing damages against" Goetz. The Thompsons filed a notice of entry of judgment on March 16, 1989.

A hearing for the purpose of determining damages was set for April 6, 1989. On April 5, 1989, an attorney entered an appearance for Goetz and requested a continuance of the hearing on damages, which was granted. On April 7, 1989, Goetz moved, pursuant to Rule 60(b), N.D.R. Civ.P., to vacate the default judgment "for excusable neglect and any other reason justifying relief from the operation of the judgment." Goetz supported the motion with, among other things, affidavits from himself, his wife, and a clinical psychologist indicating that Goetz's neglect in answering the complaint was based on his psychological inability to deal with the Thompsons' claims and allegations. Goetz also presented a proposed answer to the Thompsons' complaint.

Although noting that the defenses in the proposed answer "appear on their face to be meritorious," the trial court determined that Goetz's neglect was not excusable and denied the motion to vacate the default judgment. The court also said:

"All of the claims for damages asserted by the Plaintiffs are speculative and I have denied Plaintiffs any monetary

---

**1.** An affidavit of proof was filed with the Thompsons' original motion for default judgment. In the original motion the Thompsons requested the court to enter judgment determining "that the defendant is liable for the damages sought in Counts I, II and III, and further, with respect to Count III, that the amount of the judgment shall be $471,231.54." The affidavit of proof addressed only count III of the complaint and was filed "for the purpose of establishing said indebtedness with respect to Count III."

award to this point. It will be necessary for Plaintiffs to prove their damages pursuant to Rule 55(a)(2), NDRCiP. Most of the defenses Defendant raises in his proposed answer may be argued at the hearing on damages. At this point, I have not concluded whether to submit the issue of the amount of damages, if any, to a jury."

With the hearing on damages pending, Goetz appealed from the order denying his motion to vacate the default judgment.

Although the parties have not questioned the appealability of the trial court's order, we must dismiss an appeal on our own motion if we conclude that it fails to grant jurisdiction. *Peterson v. Zerr*, 443 N.W.2d 293, 296 (N.D.1989). The framework for analyzing this court's jurisdiction in cases where there is an appeal and there are unadjudicated claims remaining to be resolved by the trial court is settled. First, the order appealed from must meet one of the criteria set forth in § 28–27–02, N.D.C.C. *O'Neil v. Prosper Oil Company*, 448 N.W.2d 626, 627 (N.D.1989). Second, if the order does meet one of the statutory criteria, there must also be a Rule 54(b), N.D.R. Civ.P., certification. *Gast Construction Co. v. Brighton Partnership*, 422 N.W.2d 389, 390 (N.D.1988).

We have held that an order denying a motion to vacate a default judgment is an appealable order under § 28–27–02, N.D. C.C. *United Accounts, Incorporated, Bismarck v. Palmer*, 141 N.W.2d 472, 473 (N.D.1966). However, if some claims remain unadjudicated in the underlying action, an order denying a motion to vacate a default judgment requires a Rule 54(b) order certifying that there is no just reason for delay and directing the entry of a final judgment for the order to be appealable. *See Bieganek v. Taylor*, 801 F.2d 879 (7th Cir.1986); *Tarnoff v. Jones*, 15 Ariz.App. 88, 486 P.2d 200 (1971). We have said that the term "claims" is used in a general sense in Rule 54(b) to include "issues." *Sargent County Bank v. Wentworth*, 434 N.W.2d 562, 564 (N.D.1989); *Mitzel v. Schatz*, 167 N.W.2d 519, 526 (N.D.1968).

■ The default judgment in this case may be more accurately described as a "partial" default judgment because it leaves the issue of damages pending. In *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175, 179 (N.D.1981), this court held that a partial summary judgment on the issue of liability, although not a final determination of a legal malpractice claim, was an appealable order under § 28–27–02(5), N.D.C.C., and did not need to be accompanied by a Rule 54(b) certification. However, *Sheets* "predates the 'shift in our appellate procedure regarding the applicability of Rule 54(b) certification to orders that are appealable pursuant to Section 28–27–02, N.D.C.C.'" *Peterson v. Zerr, supra*, 443 N.W.2d at 296 [quoting *Harmon Motors v. First Nat'l Bank & Trust*, 436 N.W.2d 240, 241 (N.D.1989)]. In this case, there is no Rule 54(b) order in the record certifying either the default judgment or the order denying the motion to vacate the default judgment as a final judgment. Because of the development of our law concerning the relationship between Rule 54(b) and § 28–27–02 since our decision in *Sheets*, we cannot consider this matter on appeal.

But the same issue inherent in *Sheets* is present here, *i.e.*, the partial default judgment on the issue of liability eliminates any defenses to liability. This so affects the fundamental merits of the case that we will consider the appeal as a request to exercise our supervisory jurisdiction and, exercising our discretion, we will consider the issues on their merits. *See Garrison Memorial Hospital v. Rayer*, 453 N.W.2d 787 (N.D. 1990); *Odden v. O'Keefe*, 450 N.W.2d 707 (N.D.1990); *Minot Daily News v. Holum*, 380 N.W.2d 347 (N.D.1986).

■ Goetz asserts that the trial court erred, as a matter of law, in granting default judgment on the question of liability without requiring the production of any supporting evidence by the Thompsons. We agree.

Rule 55(a), N.D.R.Civ.P., provides in pertinent part:

"*(a) Entry.* If a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise appear and the fact is made to appear by affidavit or otherwise, the court may direct the clerk to enter an appropriate judgment by default in favor of the plaintiff and against the defendant as follows:

"(1) When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court, upon affidavit of the amount due and upon production of the written instrument, if any, upon which the claim is founded, may direct the entry of judgment.

"(2) *In all other cases, the court, before directing the entry of judgment, shall require such proof as may be necessary to enable it to determine and grant the relief, if any, to which the plaintiff may be entitled.* To this end, the court may:

"1. Hear the evidence and assess the damages;

"2. Direct a reference for the purpose of an accounting or for the taking of testimony or for a determination of the facts; or

"3. Submit any issue of fact to a jury." [Emphasis added.]

We believe that under the express terms of the Rule, in all cases other than those in which a sum certain is sought, some form of proof must be submitted to establish liability as well as damages. In *Braaten v. Grabinski,* 77 N.D. 422, 43 N.W.2d 381 (1950), this court interpreted the statutory predecessors to Rule 55 which are, in substance, identical to Rule 55.[2] In *Braaten,* the plaintiff brought a negligence action against the defendant to recover damages

to his car resulting from an accident. The defendant counterclaimed for damages to his car, alleging negligence on the part of the plaintiff. Because the plaintiff failed to reply to the counterclaim, the defendant asserted that he was entitled to judgment on his counterclaim. This court disagreed. After quoting §§ 28–0903 and 28–0904, N.D.Rev.Code of 1943, the court said:

"Under the foregoing, a distinction exists between an action for the recovery of money founded upon a written instrument and one for the recovery of an unliquidated claim. In the former, judgment shall be rendered upon proof of default and the production of the written instrument, whereas, in the latter, proof must be submitted to enable the court to determine the relief, if any, and the damages, if any, which the party may be entitled to recover.

\* \* \* \* \* \*

"The burden was upon the defendant to prove a cause of action under his counterclaim and since there is no evidence in the record proving the plaintiff guilty of any negligent act which contributed to or caused the damage to his car, he is not entitled to recover, regardless of the absence of a reply."

*Braaten, supra,* 43 N.W.2d at 384. *See also Monson v. Nelson,* 145 N.W.2d 892, 896 (N.D.1966) [Under Rule 55, where plaintiffs' claims were not founded upon contract but upon tort for unliquidated damages for injuries sustained in an accident caused by the negligence of defendant's decedent, "plaintiffs are required to prove the facts essential to their claim."]

**2.** Sections 28–0903 and 28–0904, N.D.Rev.Code of 1943, provided:

"*28–0903. Default Judgment on Written Instrument.* If the action is one for the recovery of money only and is founded upon a written instrument, judgment shall be rendered upon proof of such default and the production of such written instrument. Such written instrument shall be filed with the clerk before the entry of judgment unless, pursuant to the order of the trial judge, a copy certified by the party producing the same shall be filed in lieu thereof."

"*28–0904. Default Judgment; Proof to be Required.* Except as otherwise provided in

section 28–0903, the court, before rendering judgment upon default, shall require such proof as may be necessary to enable it to determine the relief, if any, to which the plaintiff may be entitled. To this end the court may:

"1. Hear the evidence and assess the damages;

"2. Direct a reference for the purpose of an accounting or for the taking of testimony, or for the determination of the facts; or

"3. Submit any question involved to a jury."

In this case, there was no affidavit of proof submitted by the Thompsons with their amended motion for default judgment. The affidavit of proof submitted with their original motion focuses exclusively on Count III of the complaint, the breach of contract action. There is no proof whatsoever in this record relating to Counts I and II of the complaint, the legal malpractice and fraudulent misrepresentation causes of action. For this reason alone, the trial court erred as a matter of law in granting default judgment against Goetz on the question of liability, at least with regard to the legal malpractice and fraudulent misrepresentation counts.[3]

Even if the affidavit of proof addressing the breach of contract count was sufficient to establish liability, the default judgment could not stand because we conclude that the trial court abused its discretion in refusing to vacate the default judgment in the interest of justice.

■ Although Goetz moved for relief from judgment under Rule 60(b) and the trial court analyzed his request under the provisions of that rule, Rule 60(b) is not applicable under the circumstances of this case. Absent a Rule 54(b) certification, the partial default judgment was not a final judgment and was "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 54(b), N.D.R.Civ.P. Rule 60(b) expressly provides for relief from only "a final judgment or order in any action or proceeding...." Rule 60(b), N.D.R.Civ.P. In *Cumber v. Cumber*, 326 N.W.2d 194, 195 (N.D.1982), we held that Rule 60(b) does not apply to interlocutory judgments and noted that "[i]nterlocutory orders of any kind are ordinarily subject to reconsideration and change without the restrictions applicable to reconsideration and changes in 'final' judgments." With the restrictive provisions of Rule 60(b) inapplicable, such interlocutory orders and judgments "are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." 7 Moore's Federal Practice ¶ 60.20, at p. 60–170 (1990) [Footnote omitted.] *See also* 11 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2852, at p. 145 (1973); *Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22–23 (1st Cir.1985); *cf. Hamilton v. Hamilton*, 410 N.W.2d 508, 515–518 (N.D.1987) [recognizing the inherent power of a court, in the interest of justice, to vacate or grant a party relief from judgment that exists independent of Rule 60(b)]. We apply the abuse of discretion standard in determining whether the trial court erred in refusing to vacate an interlocutory order or judgment. *See Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970); *Hallman v. Marion Corp.*, 411 So.2d 130, 132 (Ala.1982).

■ Goetz stated in his affidavit in support of the motion that:

"Ever since summer, 1988 when Roger and Phyllis Thompson became unhappy with my representation of them, I have psychologically been unable to deal with their claims and allegations. At first, I simply withdrew myself from the situation and felt if I conceded to their wishes the entire unpleasant situation would go away. Because of an earlier problem I had with getting legal work completed for a client, I did not want to embarrass my family and friends and I found myself mentally unable to deal with the problem. I have been able to perform legal services for clients, but when it comes to dealing with the claims of the Thompsons, I have not been able to take appropriate action. I contacted a Fargo attorney, William Kirschner, prior to the expiration of the 20 days set forth in the Summons to prepare an answer for me

---

3. The propriety of granting default judgment on liability with regard to the legal malpractice and fraudulent misrepresentation counts while leaving the question of damages unadjudicated is also questionable. The torts of negligence and fraud require proof of actual damages as an essential element of the plaintiff's case, and if no actual loss has occurred, the plaintiff fails to establish any liability. *Olson v. Fraase*, 421 N.W.2d 820, 827 (N.D.1988). Thus, if the Thompsons failed to establish actual damages at the subsequent hearing on damages, they would have likewise failed to establish any liability in the first instance.

but when he required that I provide him with information and documents from my file, I just could not comply with his request. Since that time, I have had serious spells of depression with extensive plans for suicide, but to date I have not carried out my plans for suicide. I have periods of time where I simply black out with no recollection of what happened during this time period. I have seen a counselor at the Hettinger Hospital and he has taken some tests in an effort to determine who to refer me to for professional help with my problem in dealing with the Thompsons' claims and other related problems. I am presently unable to appear to defend myself on this case. If I were to appear, I would not be able to testify; I am simply unable to bring myself to deal with this matter. I am presently in the process of getting professional advice and I pray the court to grant me a continuance and to set aside the default."

Goetz's wife stated in an affidavit that she did not become aware of the Thompsons' claims until she read a newspaper article on the case in April 1989. She said that Goetz "has been withdrawn and troubled for many months but when I would discuss this condition with him, he would just shrug it off and say it was due to the pressures of work." She said that Goetz "has been trying to protect me, our children, our relatives and our friends from the pain, agony and humiliation caused by the Thompsons' claims." She also stated that Goetz's prior experience with the Disciplinary Board and the Thompsons' allegations "were more than [Goetz] could deal with and he has blocked this entire matter from his consciousness."

Goetz also introduced a December 1988 letter written to the Fargo attorney who was to represent him in the matter in which he claimed that "the emotional and physical stress is just too much." The Fargo attorney responded to Goetz in a December 1988 letter that he believed "based upon the experiences that you have been involved, your letter and our discussions that you are in immediate need of a good psychiatric evaluation and help."

Dr. Harold Hase, a clinical psychologist, stated in an affidavit that:

"Based on my observations of William Goetz, I am able to state that William Goetz has had real psychological problems in dealing with the claims made by Mr. and Mrs. Thompson to the extent that his psychological problem has prevented him from taking appropriate action to respond to the Thompsons' claims. William Goetz has difficulty facing the reality that Mr. and Mrs. Thompson's claims are a genuine threat to him. William Goetz uses a denial mechanism to prevent coping with the Thompsons' allegations. William Goetz has what can be called reactive depression which has evolved into a fairly deep depression with suicidal thinking."

Goetz also submitted a proposed answer to the Thompsons' lawsuit setting forth several defenses which the trial court found to be "meritorious" on their face. Goetz alleged, among other things, that he did process an appeal to the SBA, but that prior to notification of the outcome of the appeal, his services had been terminated by the Thompsons. He further alleged that the Thompsons were fully aware that they signed a warranty deed, bill of sale, and a stipulation dismissing the bankruptcy proceeding, and that these documents were executed as part of the parties' negotiations with the Bank. Goetz also alleges that he signed the settlement agreement "under duress" and because of "threats" made by the Thompsons and their attorney.

In denying Goetz's motion to vacate the default judgment, the trial court reasoned:

"[W]hile it is apparent that Defendant neglected to properly care for his interests in this case, I find and conclude that the neglect is not excusable. As stated above, Defendant states he is capable of attending to the legal affairs of all of his clients except for the Thompsons. As a practicing attorney, Defendant is more aware of the consequences of failure to respond to pleadings and motions than a lay person would be. Defendant did contact Attorney Kirschner to represent him

after service of the Summons and Complaint but failed to supply Kirschner with needed information.

"Additionally, Defendant did not seek help for his alleged psychological problem until after entry of the default judgment."

Contrary to the implication of the trial court's reasoning, attorneys are not immune from mental or emotional disabilities. Even in the context of the more restrictive requirements of Rule 60(b), we have recognized that physical, mental, and emotional incapacities suffered by parties are appropriate grounds for vacating judgments. *See Suburban Sales v. District Court of Ramsey,* 290 N.W.2d 247 (N.D.1980) [mental depression]; *Galloway v. Galloway,* 281 N.W.2d 804 (N.D.1979) [alcohol addiction]; *Sioux Falls Construction Co. v. Dakota Flooring,* 109 N.W.2d 244 (N.D.1961) [mental shock caused by malignant illness suffered by defendant's wife]. In a proceeding to vacate a default judgment, there is no logical reason for a court to hold a defaulting attorney to a higher standard than a defaulting layman when mental or emotional incapacities are involved. Although the trial court placed significance on Goetz's failure to seek psychiatric assistance until after the default judgment was entered, the record shows that Goetz suffered from a psychological disability during the pendency of the Thompsons' lawsuit. It was only after prodding from concerned family members and friends that Goetz sought professional help. We fail to see how this fact discredits Goetz's claim of psychological problems.

Goetz's motion to vacate the default judgment was promptly made, was accompanied with an answer setting forth meritorious defenses, and was supported with evidence that Goetz was mentally incapable of facing the Thompsons' claims when the default judgment was entered. Under these circumstances, we conclude that the trial court abused its discretion in refusing to vacate the default judgment.

Goetz also asserts that the trial court erred in denying his motion to disqualify attorney William D. Schmidt from representing the Thompsons in this case. Relying on Rule 3.7 of the North Dakota Rules of Professional Conduct, Goetz contends that disqualification is required because Schmidt "will be a witness" in the case. A trial court's decision on a motion to disqualify opposing counsel will only be reversed when it constitutes an abuse of discretion. *Munn v. Bristol Bay Housing Authority,* 777 P.2d 188, 196 (Alaska 1989); *cf. Besette v. Enderlin School Dist. No. 22,* 310 N.W.2d 759, 764 (N.D.1981) ["it is within the trial court's discretion to allow or refuse to allow an attorney to testify on behalf of his client"].

Rule 3.7 provides:

*"RULE 3.7. Lawyer as witness.*

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) The testimony relates to an uncontested issue;

"(2) The testimony relates to the nature and value of legal services rendered in the case; or

"(3) Disqualification of the lawyer would work substantial hardship on the client because of the distinctive value of the lawyer or the lawyer's firm as counsel in the particular case.

"(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by a conflict of interest."

The practice of an attorney acting as both an advocate and a witness at a trial is strongly discouraged by courts as well as the Rules of Professional Conduct. *Fargo Women's Health Organization v. Larson,* 391 N.W.2d 627, 630 (N.D.1986); *Besette v. Enderlin School Dist. No. 22, supra.* However, a party cannot disqualify an opponent's attorney by making a "mere declaration of an intention to call opposing counsel as a witness," thereby interfering with an opponent's *"right* to the counsel of its choice ... for mere strategic or tactical reasons." *Security General Life Ins. v. Superior Court,* 149 Ariz. 332, 718 P.2d 985, 988 (1986) [Emphasis in original]. Rule 3.7(a) thus disqualifies an attorney

only when the attorney is "likely to be a necessary witness." "This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be determined that no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative." *ABA/BNA Lawyers' Manual on Professional Conduct* 61:507 (1984). Even when it has been adequately shown that an attorney will be a "necessary witness," Rule 3.7(a) envisions a balancing of the interests at stake in resolving the disqualification question. The Comment to Rule 3.7 states:

> "[P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. *Even if there is a risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client."* [Emphasis added.]

In its ruling on the motion in this case, the trial court reasoned:

> "Mr. Schmidt did negotiate the contract that is the subject of Count III of Plaintiffs' Complaint. His testimony as to that matter may well be vital to Defendant's defense as to that allegation. Mr. Schmidt is aware of the language of Rule 3.7 and may wish to have another member of his firm present when and if he is compelled to testify. I will not disqualify Mr. Schmidt from further representing the Plaintiffs as to compel them (Plaintiffs) to find other counsel at this late date would work a hardship on them. However, Mr. Schmidt should bear in mind that he may well be compelled to testify...."

On the record before us, and at this stage of the proceedings, we cannot say that the trial court abused its discretion in refusing to disqualify Schmidt or his law firm from representing the Thompsons.

Accordingly, we grant the supervisory writ and direct the trial court to vacate the default judgment.

VANDE WALLE, LEVINE, GIERKE and MESCHKE, JJ., concur.