In the Matter of the Application for Disciplinary Action Against William G. GOETZ, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

William G. GOETZ, Respondent.

Civ. Nos. 910022, 910023.

Supreme Court of North Dakota.

July 31, 1991.

Vivian E. Berg, Disciplinary Counsel, Bismarck, for petitioner.

William G. Goetz, pro se.

LEVINE, Justice.

We review the findings of a hearing panel of the Disciplinary Board that Attorney William G. Goetz committed many acts of professional misconduct for which the panel recommends disbarment. We direct that Goetz be disbarred and that he pay costs associated with these proceedings.

William G. Goetz was admitted to the bar of the Supreme Court of the State of North Dakota in 1970 and thus is subject to the jurisdiction of this Court and its Disciplinary Board. N.D. Const. Art. VI, Sec. 3; North Dakota Rules of Professional Conduct 8.5; North Dakota Procedural Rules For Lawyer Disability And Discipline 1.1(A). Goetz is currently suspended from the practice of law on an interim basis. *See In re Goetz*, 450 N.W.2d 710 (N.D.1990).

Counsel for the disciplinary board received a variety of complaints from Goetz's clients and also received notice of Goetz's conviction of issuing a check for more than $10,000 without sufficient funds, a felony. Ultimately, formal proceedings were initiated and two complaints were filed against Goetz, one alleging misconduct in representing clients and managing client monies, and the other alleging the felony conviction. Goetz was personally served with a Petition for Discipline in each case. When Goetz did not respond, counsel moved that the hearing panel considering the two complaints make default findings pursuant to Rule 3.1(D) of the North Dakota Procedural Rules For Lawyer Disability And Discipline. Counsel sent notice, by ordinary mail, of the Motion for Default Findings, the hearing by the disciplinary panel and the panel's findings and recommendations. *See* NDPRLDD 3.2(B) [service of papers or notices required by rules of lawyer discipline shall be made under NDRCivP 5]; NDRCivP 5(b) [service on a party not represented by lawyer must be made by delivering a copy to the party or by mailing it to the party's last known address]. The disci-

plinary board adopted the hearing panel's findings that Goetz had committed acts of misconduct and its recommendation that he be disbarred.

We review disciplinary proceedings against attorneys *de novo* on the record under a clear-and-convincing standard of proof. *In re Peterson,* 446 N.W.2d 254, 255 (N.D.1989). In our review, we accord due weight to the findings, conclusions and recommendations of the hearing panel. *Id.*

Goetz has not responded at any stage of these proceedings. Under our rules for lawyer discipline, a lawyer has twenty days after the service of the petition for disciplinary action in which to make a response. NDPRLDD 3.1(D)(2). "In the event the lawyer fails to timely answer, the charges shall be deemed admitted." *Id.* Because Goetz has failed to answer the charges made in the two petitions for disciplinary action, those charges are deemed admitted. *Id.* We first set forth the facts asserted in the complaints that support the findings of misconduct, the findings and then consider the appropriate sanctions.[1]

## THOMPSON CHARGES

During mid–1985 through late 1987, Goetz represented Roger and Phyllis Thompson in three interrelated matters: foreclosure of loans by the First National Bank, Hettinger, a chapter 11 bankruptcy proceeding and a loan application to the Small Business Administration (SBA).[2]

In the foreclosure action, Goetz obtained the Thompsons' signatures on a warranty deed and a bill of sale covering Thompson's farm machinery and equipment, both in favor of the Bank. Goetz did not explain the significance of the documents and, in fact, told the Thompsons the warranty deed was a mortgage deed required by the SBA.

The SBA loan was part of the Thompsons' efforts to refinance their debt. Goetz prepared the application documents for the Thompsons. When the SBA denied Thompsons' loan application, Goetz told the Thompsons he would file an appeal. Goetz did not file the appeal but gave the Thompsons fictitious progress reports on the appeal.

Goetz filed a Chapter 11 bankruptcy petition for the Thompsons. He later told the Thompsons that a hearing was set for their bankruptcy petition. He also told them that the Bank would extend the time for refinancing their debt if they would dismiss the bankruptcy petition. At the very time that Goetz was trying to get Thompsons' consent to dismiss the petition, he had already secured a dismissal by filing a stipulation of dismissal he had tricked Thompsons into signing.

By November 1987, Thompsons discovered that the warranty deed and an "Agreement and Option to Purchase" had been filed with the register of deeds. These documents did not correspond with what the Thompsons believed Goetz was doing for them, based upon Goetz's reports to them. Goetz denied any knowledge of the agreement, even though he had arranged for its recording. At this time, Goetz told the Thompsons that he had paid, from his trust account, real estate taxes on the property covered by the deed. When the Thompsons complained about paying taxes on property they no longer owned, Goetz told them he would stop payment on the check. The tax "transaction" was fictitious; Goetz had not paid the taxes.

---

1. The conduct set out in the complaints spanned the years 1985 to 1989. It falls under both the former North Dakota Code of Professional Responsibility which was effective from January 1, 1977 to December 31, 1987 and the current North Dakota Rules of Professional Conduct which became effective January 1, 1988. Accordingly, this opinion cites to the rules applicable at the time of Goetz's misconduct.

2. In *Thompson v. Goetz,* 455 N.W.2d 580 (N.D.1990), the Thompsons asserted a legal malpractice claim against Goetz. Goetz did not respond to the complaint and the trial court entered a default judgment. On appeal, we directed the vacation of that judgment. The facts in the *Thompson* opinion were derived from the Thompsons' complaint, while the facts in this opinion are taken from the Disciplinary Board's Petition for Discipline.

Goetz billed the Thompsons over $6,000 for work performed from August 30, 1985 through September 15, 1987.

The hearing panel found that in his dealings with the Thompsons, Goetz committed fraud and deceit, he failed to advance the Thompsons' interests in the foreclosure, loan application and bankruptcy matters, he lied to the Thompsons about the progress of their matters, he failed to advise them about significant developments involving their interests, he failed to keep client funds safe, and he charged an excessive fee in violation of the North Dakota Code of Professional Responsibility DR 1–102(A)(4), (5), (6), DR 2–106, DR 6–101(A)(3), DR 7–101(A)(1), (2), (3), DR 9–102(B)(3); North Dakota Rules of Professional Conduct 1.3, 1.4(a), (b), 1.15; North Dakota Procedural Rules For Lawyer Disability and Discipline 1.2(A)(3), (8).

## AUSTIN CHARGES

Goetz represented Leslie and Helen Austin in two matters. The first was a civil action brought by the Federal Land Bank of St. Paul. Goetz successfully resisted the Bank's motion for summary judgment but then appeared at the trial and stipulated to an entry of judgment against the Austins in the amount of $92,547.03 plus interest exceeding $41,000. The Austins had not authorized Goetz to stipulate to the judgment. Nor did Goetz notify the Austins that a judgment had been entered.

In the second matter, Goetz represented the Austins during early 1987 in a suit brought in a South Dakota court. When Goetz failed to respond to a motion for summary judgment, judgment was entered against the Austins. Goetz did not tell the Austins about the entry of judgment. When the Austins learned, in April 1987, that the sheriff was planning to execute the judgment by levying against their personal property, they contacted Goetz and instructed him to file a bankruptcy petition. Austins paid Goetz a $1,000 retainer. In September 1987, the Austins learned that their land was being advertised for sale. Austins again contacted Goetz and Goetz filed the Austins' bankruptcy petition October 20, 1987, more than five months after he told the Austins he had filed the petition. Goetz represented the Austins at the first creditors' meeting in December 1987. In April 1988, Austins received notice that their petition was in danger of being dismissed for lack of prosecution. Goetz responded, but Austins hired other counsel and Goetz withdrew.

Goetz submitted a statement in December 1988 showing a balance of $1,110.71 due for legal services, some of which was for work on the bankruptcy petition. The statement did not acknowledge receipt of the $1,000 retainer paid to Goetz by the Austins in April 1987.

The hearing panel found that Goetz neglected the legal matters the Austins entrusted to him, acted in ways that prejudiced the Austins' interests, failed to inform the Austins about significant developments in their cases, deceived the Austins concerning the work he claimed to be performing, and charged an excessive fee in violation of NDCPR DR 1–102(A)(4), (5), (6), DR 6–101(A)(3), DR 7–101(A)(1), (2), (3); NDRPC 1.3, 1.4(a), (b); NDPRLDD 1.2(A)(3), (8).

## PLANTING CHARGES

Goetz represented John Planting on various matters, including a claim involving a pickup. When Planting attempted to change counsel for his pickup claim, Goetz refused to surrender a machinery part that was a crucial piece of evidence. Planting filed a complaint with the Disciplinary Board in an attempt to gain the return of the part. Goetz contacted Planting and tried to persuade him to withdraw his disciplinary complaint by promising prompt action regarding the pickup claim and a second matter involving a marketing idea.

The hearing panel found that Goetz attempted to interfere with a disciplinary matter in violation of our rule that prohibits conduct which is prejudicial to the administration of justice. NDPRLDD 1.2(A)(8).

## BECKMAN CHARGES

Goetz represented Dale Beckman, the personal representative of an estate, in three matters concerning a conflict-of-interest dispute with a realtor. Goetz filed a civil complaint against the realtor in September 1988. Goetz filed an administrative complaint with the state real estate commission in April 1989. Goetz told Beckman both complaints were filed in 1988.

Goetz also defended the estate in the realtor's action to foreclose a note. Goetz did not respond to the realtor's motion for summary judgment and judgment was entered against the estate. Goetz did not tell Beckman about this development. Goetz collected $3,000 for representing the estate.

The hearing panel found that Goetz did not act diligently on behalf of the estate, did not keep Beckman informed and, indeed, lied about developments in the cases, and charged an excessive fee in violation of NDRPC 1.3, 1.4(a), (b); NDPRLDD 1.2(A)(3), (8).

## POWELL CHARGES

Goetz borrowed $15,000 from his client, William C. Powell, in May 1989. In August 1989, Goetz gave Powell a check for principal and interest but the Bank dishonored the check. Goetz provided excuses for the bad check, including an assertion that the check had been drawn against the wrong account. In September 1989, Goetz gave Powell a second check for additional interest and told Powell that both checks were then "good." Both checks were returned by the bank. Powell sued Goetz for the debt, obtaining a judgment and settlement.

The hearing panel found that Goetz lied to Powell in violation of NDPRLDD 1.2(A)(3).

## SCHACKOW and KRAMBEER CHARGES

In 1981, Goetz persuaded Robert and Benita Schackow to invest $100,000 through him. From the time they gave him the money until the end of February 1989, Goetz provided sham documentation showing the Schackows' investment had grown

to $181,888.44. Goetz took the money for his own use.

Goetz represented Ethel and Edwin Krambeer. Goetz convinced the Krambeers that there would be tax advantages in liquidating certificates of deposit and investing the money through Goetz. He received $100,000 from the Krambeers, which he deposited in his trust account. Goetz pilfered the account. By October 1987, the balance was $15,623.77, and Goetz had made no investments on behalf of the Krambeers. Goetz told the Krambeers he had invested the money through specific brokerage firms, when he had not. He told the Krambeers he had initiated a federal investigation into one of the companies in which the Krambeers' money was invested, when no investigation was started. Goetz told the Krambeers he was filing a claim against his insurance policy on behalf of the Krambeers, when no claim had been filed. When the Krambeers contacted law enforcement and bar authorities respecting Goetz's conduct, Goetz promised to restore the Krambeers' money in exchange for their refusal to further cooperate with the authorities. Goetz persuaded Ethel Krambeer to lie to Goetz's wife and Goetz's attorney, telling them that she had received her money from Goetz and that she was satisfied with Goetz' representation.

The hearing panel found that Goetz was dishonest and deceitful to these clients and that Goetz interfered with its investigation in violation of NDCPR DR 1–102(A)(4), (5), (6); NDPRLDD 1.2(A)(3), (8).

## LARSON CHARGES

Goetz obtained a $40,000 short-term loan from Hedvig Larson in 1989. When Larson asked for repayment, Goetz persuaded her to leave $20,000 with him to invest on her behalf and gave her a check for $22,287.52. The check was returned by the bank for nonsufficient funds. Goetz had spent all the money and did not invest any money on Larson's behalf. Later, Goetz told Larson that he would pay the debt if Larson would refuse to cooperate with

criminal or disciplinary investigations of his actions.

The hearing panel found that Goetz was dishonest and deceitful to Larson and that Goetz interfered with the panel's investigation in violation of NDPRLDD 1.2(A)(3), (8).

## SOLSETH CHARGES

Elmer Solseth hired Goetz to sue Farm Credit Services. Goetz told Solseth he filed the complaint in December 1989 and gave him progress reports, including the setting of a trial date and a settlement offer. Goetz did not file a complaint.

The hearing panel found that Goetz did not act diligently on Solseth's behalf and that he was dishonest and deceitful to Solseth in violation of NDRPC 1.3; NDPRLDD 1.2(A)(3), (8).

## FELONY CONVICTION

Goetz was convicted in state court of a felony for willfully issuing a check without sufficient funds. *See* NDCC § 6–08–16.-2(3). The hearing panel found that Goetz had committed a serious crime as defined by our disciplinary rules. NDPRLDD 4.1(C).

## SANCTIONS

This Court has constitutional and statutory authority to establish rules for the conduct of lawyers and for disciplining lawyers for misconduct. ND Const. Art. VI, sec. 3; NDCC § 27–14–01. Pursuant to that authority, we have adopted standards to be used in imposing an appropriate sanction following a determination by clear and convincing evidence that a lawyer has violated our rules governing professional conduct. *See* NDSILS 1.3.

The petitions against Goetz come to us in a default posture. Because Goetz has filed no response to the petitions, the facts set out in the petitions for discipline are deemed admitted. *See* NDPRLDD 3.1(D)(2). We conclude that these admissions provide clear and convincing evidence supporting the panel's findings that Goetz violated our Code of Professional Responsibility, Rules of Professional Conduct and Rules For Lawyer Disability And Discipline.

The findings we have summarized detail not only individual instances of Goetz's lying, cheating and stealing from clients, but also a vivid pattern of misconduct. Goetz acted without concern for his clients or the trust vested in the office of attorney. The Preamble to the Rules of Professional Conduct explains that "[a] lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." There is little doubt that Goetz failed to represent his clients, failed to act in a manner remotely befitting an officer of the legal system and failed to exercise his special responsibility for the quality of justice. Indeed, his case is a paradigm of lawyer misconduct that besmirches the reputation of all lawyers, debases our profession and undermines public trust in the law. Goetz lied, cheated, stole and obfuscated. His breaches of the rules of attorney conduct are egregious and recurrent.

Under the North Dakota Standards For Imposing Lawyer Sanctions, disbarment may be appropriate for a single instance when a lawyer steals from a client, or knowingly fails to perform legal services and thus seriously injures a client, or engages in a pattern of neglect of client matters which causes serious injury to a client, or lies to a client for the lawyer's benefit, or intentionally interferes with the administration of justice. NDSILS 4.11, 4.41(b), (c), 5.11(a), (b). Here, Goetz, incredibly, committed that entire litany of offenses, any one of which could warrant disbarment. We also note that Goetz was suspended from the practice of law for three months in 1982. *See In re Goetz*, 316 N.W.2d 84 (N.D.1982).

We may consider aggravating circumstances in deciding the appropriate sanction. NDSILS 9.0, 9.1. The aggravating circumstances here are replete: prior disciplinary offense; dishonest and selfish motive; pattern of misconduct; multiple offenses; substantial experience in the practice of law; and apparent indifference to making restitution. NDSILS 9.22(a), (b),

(c), (d), (i), and (j). There are also factors which may be considered as justifying a reduction in the degree of discipline to be imposed. NDSILS 9.3. But nothing in this record speaks to mitigating Goetz's sanction and Goetz has made no effort to explain his conduct or to introduce evidence which mitigates against disbarment. *See* NDSILS 9.32(b), (c), (d).

We conclude that disbarment is the appropriate sanction.

## COSTS

In conjunction with Goetz's prior interim suspension, a professional trustee was named to take control of Goetz's law practice. *See* Order Appointing Professional Trustee, *In re Goetz*, No. 900016 (N.D. Feb. 23, 1990); *See also* NDPRLDD 6.4. That trustee has now completed its duties and has been reimbursed in the amount of $2,395.75 for actual expenses incurred. *See* Order Accepting Recommendation and Discharging Duties of Professional Trustee, *In re Goetz*, No. 900016 (N.D. Aug. 1, 1990). When discipline is imposed on a lawyer, our rules provide that the costs and expenses may be assessed against the lawyer. NDPRLDD 1.3(D). We also have the authority to impose costs as an element of the sanction or remedy imposed. NDSILS 2.7(b).

Accordingly, we order that William G. Goetz be disbarred and his name stricken from the roll of lawyers authorized to practice before this Court. We further order that William G. Goetz pay to the Secretary of the Disciplinary Board the costs and expenses of these disciplinary proceedings.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.