In the Matter of the Application for DISCIPLINARY ACTION AGAINST Kenneth S. RAU, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

Kenneth S. RAU, Respondent.

Civ. Nos. 940185, 940188.

Supreme Court of North Dakota.

June 27, 1995.

Paul Wayne Jacobson (argued), Asst. Disciplinary Counsel, Bismarck, for petitioner.

Kenneth S. Rau (argued), Mandan, pro se.

PER CURIAM.

A hearing panel of the Disciplinary Board found that attorney Kenneth S. Rau committed acts of professional misconduct and rec-ommended he be disbarred. The Disciplinary Board considered the matter, accepted the findings and recommendation of the hearing panel, and under Rule 3.1 F of the North Dakota Procedural Rules for Lawyer Disability and Discipline (NDPRLDD), submitted its report and recommendation of disbarment for consideration by this court. Rau filed objections to the Board's report. He did not file a brief with this court, but he was allowed to present oral argument. We direct that Rau be disbarred and that he pay the costs associated with these proceedings.

We review disciplinary proceedings against attorneys *de novo* on the record under a clear and convincing standard of proof. *In the Matter of Goetz,* 474 N.W.2d 29 (N.D. 1991). In conducting our review, we accord due weight to the findings, conclusions, and recommendations of the hearing panel as adopted by the Disciplinary Board. *Id.* The record shows Rau committed several acts of professional misconduct involving deceit, theft, and neglect in representing his clients.

## WALSH SETTLEMENT

In 1992, Robert Walsh hired Rau to represent him in a dispute concerning a cattle sale. When the litigation was scheduled for trial, Rau did not inform Walsh. Rau failed to file briefs within the schedule set by the trial court and failed to communicate with or respond to requests made by the trial court concerning the litigation.

Before trial, Walsh agreed to accept a $4,000 settlement of the dispute. The defendant's insurance company issued a $4,000 settlement check made payable to Walsh and Rau. Rau deposited the check in his client trust account without obtaining the endorsement of Walsh. Rau then informed Walsh he had sent a $4,000 check to Walsh's home address in Garrison. Walsh was terminally ill with a brain tumor at the time, and was staying in Mandan. He made numerous trips to Garrison to locate the check and made numerous contacts with Rau to find out what happened to it. Rau eventually told Walsh the check had been forged by someone at a Washburn bank and that authorities had a videotape of the person forging the

check. That story was contradicted by authorities, who said they knew nothing about such an incident. Rau eventually wrote a second check to Walsh. However, Rau's account did not have sufficient funds to cover the check, and Rau placed a stop payment order on the check within four days after writing it. Walsh never received payment of the $4,000 settlement from Rau.

Rau testified at the disciplinary hearing that he wrote a $4,000 check to Walsh from his trust account and gave the check to his friend, Linda Wilson, for mailing. He claims he has no personal knowledge of what happened to the check after that, but he suspects Wilson failed to mail it. He claims Wilson told him the story about the Washburn forgery, which he then merely related to Walsh. Rau also claims his client trust fund was depleted through Wilson's forgery of Rau's name on numerous checks from that account, which she deposited to Rau's personal account. Rau claims Wilson then forged his name to checks from the personal account to pay bills such as rent and car payments for herself and for Rau. Rau claims he had no knowledge of Wilson's actions and that he is now bankrupt and without funds to pay Walsh the $4,000 he owes him.

The hearing panel and Board rejected Rau's explanation of his failure to pay the $4,000 settlement to Walsh. The Board found Rau "knowingly converted the $4,000.00 settlement amount to his own use or to the use of his girlfriend," and that Rau "intentionally misled and deceived Walsh" regarding the facts surrounding the settlement payment. The Board found Rau failed to appropriately communicate with Walsh, failed to safeguard Walsh's property, and engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, all in violation of Rules 1.4 and 1.15 of the North Dakota Rules of Professional Conduct (N.D.R.Prof.Cond.), and Rule 1.2 A(3), NDPRLDD.

### O'NEILL LITIGATION

Kevin O'Neill hired Rau to represent him regarding a product warranty claim. O'Neill paid Rau a $50 filing fee and was informed his action had been filed and had progressed to a default judgment. Subsequently, Rau failed to respond to telephone calls and correspondence from O'Neill and failed to return telephone calls as promised.

The Board found that Rau did not file an action on O'Neill's behalf, did not diligently pursue the claim, did not communicate reasonably with O'Neill about the representation, did not safeguard the money he received from O'Neill, and that Rau acted in a dishonest, fraudulent, and deceitful manner in representing O'Neill, all in violation of Rules 1.3, 1.4, and 1.15(a), N.D.R.Prof.Cond., and Rule 1.2 A(3), NDPRLDD.

Rau did not respond to or refute the allegations involving his misconduct in representing O'Neill.

### BICHLER LITIGATION

Kathy Bichler hired Rau to represent her regarding a workers compensation claim. The Workers Compensation Bureau initially made a favorable determination for Bichler but later reversed its findings. Rau received $100 from Bichler to file an appeal to the district court and later received another $100 to file an appeal to this court.

The Board found Rau failed to file a timely appeal in the district court and that he misled Bichler about the importance of the district court proceedings and about his representation on her behalf. The Board found Rau's conduct in representing Bichler constituted a failure to represent a client diligently, failure to appropriately communicate, failure to safeguard his client's property, and that his conduct in representing her involved dishonesty, deceit, and misrepresentation, all in violation of Rules 1.3, 1.4(a), and 1.5(a), N.D.R.Prof.Cond., and Rule 1.2 A(3), NDPRLDD.

Rau did not respond to or refute the allegations involving his misconduct in representing Bichler.

We conclude the record contains clear and convincing evidence to support the Disciplinary Board's conclusions that Rau committed numerous acts of professional misconduct. The record supports the allegations that Rau knowingly lied to his clients and neglected to

diligently and appropriately represent them as he was hired to do. The record also contains clear and convincing evidence that in representing Walsh, Rau either knowingly, or through gross negligence, converted Walsh's funds to his own use and then misrepresented to Walsh and others what had happened.

### AGGRAVATING AND MITIGATING CIRCUMSTANCES

Under Rule 9.0 of the North Dakota Standards for Imposing Lawyer Sanctions (NDSILS), we consider aggravating and mitigating circumstances in deciding the appropriate sanction.

■ Rule 9.32(c) and (h) expressly makes "personal or emotional problems" and "mental disability or impairment" mitigating factors in considering the appropriate sanction for professional misconduct. However, the Board found Rau was not under a mental disability and that Rau's emotional problems did not prevent him from understanding the consequences of his actions. We disagree with the implication of the Board's finding that a disciplinary sanction cannot be mitigated by a medical condition or illness unless it prevents that person knowing right from wrong.

■ Aggravating and mitigating circumstances come into play only after professional misconduct has been established. Rule 9.1, NDSILS. Mitigation or mitigating circumstances are defined as "considerations or factors that may justify a reduction in the degree of discipline to be imposed." Rule 9.31, NDSILS. Black's Dictionary p. 1002 (6th ed. 1990), further explains mitigating circumstances:

> "Such as do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability...."

Although personal or emotional problems and mental disabilities are mitigating factors that may reduce a disciplinary sanction against an attorney, they do not justify or excuse the attorney's misconduct. *Disciplinary Action Against Disselhorst,* 444 N.W.2d 334, 337 (N.D.1989); *Matter of Ellis,* 439 N.W.2d 808, 810 (N.D.1989). Nor do they shield the attorney from professional responsibility. *Disciplinary Board v. Amundson,* 297 N.W.2d 433, 443 (N.D.1980). Rather, they are offered and considered merely as explanations of the lawyer's conduct in order to temper the imposed sanction.

Under Rule 5.1 C, NDPRLDD, information relating to a lawyer's mental condition which adversely affects the ability to practice law "shall be investigated" and formal proceedings conducted, if warranted by the investigation, to determine if the lawyer should be transferred to incapacitated status. We believe there was sufficient medical evidence submitted by Rau in this case to warrant such an investigation by disciplinary counsel. Under Rule 2.4 B(1), NDPRLDD, disciplinary counsel is given both the power and responsibility to investigate all information coming to counsel's attention which could be grounds for the lawyer to be transferred to disability inactive or incapacitated status. However, Rau has made no claim he should be placed on disability or incapacitated status. His only objection to the Board's consideration of the medical evidence is that the Board did not give sufficient weight to his mental and emotional problems as mitigating circumstances.

In support of his request for a lesser sanction, Rau submitted medical records showing he has suffered from a long history of bipolar personality disorder. Dr. Albert F. Samuelson, a doctor of psychiatry, diagnosed Rau's bipolar disorder in December 1991, explaining Rau experiences periods of elation and euphoria coupled with alternating periods of depression. The depression led Rau to drink excessively, and the mood disturbances from the bipolar disorder were, according to Dr. Samuelson, "disruptive to his marriage and to his work patterns." Dr. Samuelson prescribed medication to treat Rau's illness. When Dr. Samuelson saw Rau again on April 28, 1993, Rau was divorced and continued to suffer from depression. However, Dr. Samuelson reported that Rau appeared to be "in good touch with his surroundings" and that there was no evidence of "disorganization" in Rau's thinking.

 

When an attorney seeks mitigation of a sanction for professional misconduct by reason of psychological disability, the attorney must at least demonstrate he had a severe psychological or emotional problem and it was the cause of the misconduct. *See* Commentary to the *Standards of Imposing Lawyer Sanctions* (February 1986) of the American Bar Association; *Matter of Disciplinary Action Against Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). Rau offered no expert testimony to show his mental illness either caused or contributed to his breaches of professional conduct. While the evidence establishes both the existence and nature of Rau's illness, it does not bridge the gap between the correlation of Rau's medical condition and professional misconduct on the one hand, and the causal relationship between the two, on the other hand. Correlation is not synonymous with causation. *State v. Bjornson,* 531 N.W.2d 315 (N.D.1995). Therefore, we can only speculate about the effect his illness had on his actions, and we need more than speculation to mitigate his sanction for professional misconduct.

Rau committed multiple acts of deceiving his clients, and converted client funds to his personal use. A lawyer's conversion of client funds is impossible to condone and is one of the least excusable acts of misconduct for which a lawyer can be disciplined. *Matter of Dosch,* 527 N.W.2d 270 (N.D.1995). Rau has shown little or no remorse for his wrongdoing and has not made restitution to his clients. These aggravating circumstances are significant.

The primary purpose of disciplinary proceedings is to protect the public. *Disciplinary Action Against Larson,* 485 N.W.2d 345 (N.D.1992). Rules 4.11 and 5.11(a) and (b), NDSILS, authorize disbarment for a single instance of stealing from a client, lying to a client for the lawyer's benefit, or intentionally interfering with the administration of justice. We agree with the Board's implicit conclusion that the evidence of Rau's depression and bipolar personality disorder does not provide a satisfactory explanation for Rau's intentional acts of lying to and cheating his clients. Rau's conduct is sufficiently egregious to support the Board's recommendation he be disbarred, and having considered all factors presented in this record, we conclude disbarment is the appropriate sanction. Accordingly, we order that Kenneth S. Rau be disbarred and his name removed from the role of lawyers authorized to practice before this court.

Under Rule 1.3, NDPRLDD, costs and expenses of the disciplinary proceedings, unless otherwise ordered, are to be assessed against the disciplined lawyer. Under Rule 2.7(b), NDSILS, assessment of costs is an authorized sanction. Accordingly, we further order that Kenneth S. Rau pay the secretary of the Disciplinary Board the costs and expenses of these disciplinary proceedings.

VANDE WALLE, C.J., and LEVINE, NEUMANN, SANDSTROM and MESCHKE, JJ., concur.