Richard D. VARRIANO, Plaintiff
and Appellee,

v.

Dale BANG, Defendant,

and

Len Martin, Defendant and Appellant.

Richard D. VARRIANO, Plaintiff
and Appellee,

v.

Dale BANG, Defendant and Appellant,

and

Len Martin, Defendant.

Civ. Nos. 950149, 950150.

Supreme Court of North Dakota.

Jan. 9, 1996.

Rehearing Denied Jan. 30, 1996.

Mertz Law Office, Fargo, for plaintiff and appellee; argued by Monty G. Mertz.

Dale Bang, pro se, Killdeer, submitted briefs, and B. Timothy Durick (argued), Pearce & Durick, Bismarck, for defendant and appellant Dale Bang.

Len Martin, pro se, Detroit Lakes, MN, for defendant and appellant. Submitted on briefs.

MESCHKE, Justice.

Dale Bang and Leonard Martin appeal from judgments on a jury verdict against them awarding Richard Varriano $300,000 in damages for defamation. We affirm.

Bang hired Varriano to represent him in a divorce from Bang's wife, Viola. She contested the validity of a prenuptial agreement prepared by attorney Marshall Bergerud. During the divorce trial, Bang settled with Viola for $100,000, upon Varriano's recommendation.

Near the end of April 1993, Bang sent Varriano a copy of a booklet entitled "When Dishonesty Pays," by "Len Martin," containing this excerpt:

Why did Varriano settle for $100,000 when he had Viola and [her attorney Ronald] Reichert on the ropes? Did he tell Reichert that [Bang] didn't protest when told that he'd be lucky to get off with paying Viola $80,000? And did Varriano tell Reichert that since [Bang] hadn't protested the $80,000 figure, he'd probably go along with a $100,000 settlement? That would be an additional $20,000. Was it agreed that some of it would go to Varriano? Since Varriano had agreed to "take over all of [Bang's] problems" for the low fee of $7,500, the extra money would then make his work worthwhile.

I can think of no other reason for Varriano to drop the ball at that point. After all, the hearing had gone well during the morning session. And it was planned to put [Bang's] accountant on the stand with his stack of documents that would prove Viola had told many lies in her deposition.

Varriano says this excerpt accused him of accepting a bribe for recommending the settlement to Bang.

On September 21, 1993, Varriano sued Bang and Martin for defamation, alleging that they, "working together and in concert, wrote, printed, and caused [the booklet] to be published...." Varriano's complaint alleged that the booklet was widely distributed in North Dakota, "greatly injured" him, and "prejudiced ... his professional reputation." Varriano venued and filed the defamation action in Cass County, and he served process by certified mail on Bang at his Dunn County residence of Killdeer, North Dakota. On September 22, 1993, Bang signed the return receipt.

Neither Bang nor Martin retained counsel to assist them in defending the defamation action. On October 8, 1993, Bang misfiled Varriano's Cass County pleadings in Dunn County, and then moved the Dunn County court to dismiss the action, alleging insufficient service of process, improper venue, and failure to state a claim for relief.[1] The Dunn County trial court realized that Varriano had begun the action against Bang in Cass County, that Bang had been properly served on September 22, 1993, and that Bang had failed to make and file a timely demand for a change of venue. The Dunn County court dismissed those proceedings on November 24, 1993, and returned Bang's pleadings to him.[2]

On December 17, 1993, Varriano filed an affidavit stating that Martin's last known address was Valley City, North Dakota, and that Martin could not be found for personal service of process. In January 1994, Varriano served Martin by publication.

When Bang and Martin failed to answer the Cass County complaint, Varriano moved for a default judgment on September 13, 1994. On September 19, Bang and Martin moved to dismiss the action on various grounds, including lack of personal jurisdiction, improper venue, and a failure to state a claim for relief. After a hearing, Judge Rob-

---

1. Bang's Dunn County pleadings are not contained in the Cass County record here, so they are not properly before us on this appeal. See, e.g., Sandbeck v. Rockwell, 524 N.W.2d 846, 848 (N.D.1994). Our references to the Dunn County proceedings are only to describe the complete context of this case.

2. Bang appealed the Dunn County order to this Court, but we dismissed the appeal on January 19, 1994, because the order was not appealable. Bang and Martin argue here that the Dunn County court "erred when it issued an order for the dismissal of a proceeding that was more properly venued in the County of Dunn...." Because the Dunn County pleadings are not properly before us, we do not address this argument.

ert Eckert denied the motion for a default judgment and the motions to dismiss, and ordered Bang and Martin to answer within ten days. Bang and Martin then answered.

Judge Eckert entered a pre-trial order on January 30, 1995, that ordered the parties to complete discovery and to file pre-trial memorandums by February 15, 1995, and that scheduled trial for March 7. On February 15, however, Martin filed a "Judicial Notice to Reconsider," alleging that the pre-trial order was "defective" because the signature block referred to Judge Richard Grosz instead of Judge Eckert, who signed the order. Martin also alleged that he had filed a "Certificate of Non–Readiness," and he requested an additional sixty days to complete discovery.

At a February 28 pre-trial conference that Bang did not attend, Judge Eckert ruled that neither Bang nor Martin had properly filed a "Certificate of Non–Readiness," nor served one on Varriano. Judge Eckert also ruled, and the record confirms, that neither Bang nor Martin had complied with the January 30 pre-trial order in any way.

On the day before trial, March 6, Bang moved for summary judgment. On the morning of trial, Martin filed a "Demand for Change of Judge," alleging that Judge Eckert was prejudiced by a 1987 booklet authored by Martin, "Godfathers of North Dakota," that described a "former mob member" accusing Judge Eckert of "illegal acts." Judge Eckert denied, as untimely, Bang's motion for summary judgment and Martin's demand for change of judge. Judge Eckert also denied an informal motion by Bang and Martin for a continuance to allow them time to arrange for a Canadian lawyer to represent them at the trial. Then, minutes before jury selection began, Martin voluntarily left the courtroom, Bang also soon left, and they did not return.

Judge Eckert ruled that Bang and Martin were not in "total default" because they had answered and appeared. *See* NDRCivP 55. Judge Eckert therefore proceeded with the jury trial in their absence. After Varriano presented his case, the jury returned a verdict finding Bang and Martin had defamed and injured Varriano and awarding Varriano

$300,000 in compensatory damages. The jury made Bang 70% and Martin 30% responsible. Judgments were entered against Bang for $210,000 and against Martin for $90,000. Bang and Martin each appealed.

On September 12, 1995, Bang moved this Court for leave to seek relief from the judgment in the trial court. On September 26, 1995, an attorney appeared on Bang's behalf, moved to postpone oral arguments, and sought permission to supplement Bang's appellate briefs. We denied these motions on September 27, 1995. On October 4, 1995, the day before oral argument, Bang moved this Court, again representing himself, to stay the judgment pending this appeal. The trial court had denied Bang a stay on appeal for his failure to file a supersedeas bond under NDRCivP 62(d), but told Bang he could renew his request if he filed the proper bond. Because Bang had not yet filed a supersedeas bond, we did not grant his October 4 stay motion either.

## 1. *Personal Jurisdiction.*

■ Bang argues that Varriano "failed to serve a Summons and Complaint" upon him, and that the trial court therefore "lacked personal jurisdiction." Bang further contends that "jurisdiction could only be obtained in Dunn County." We disagree.

The rules of civil procedure authorize personal service of process by "any form of mail addressed to the individual to be served and requiring a signed receipt and resulting in delivery to that individual." NDRCivP 4(d)(2)(A)(iv). Varriano mailed a copy of the summons and complaint by certified mail to Bang, and the receipt was returned to Varriano with Bang's signature. Varriano filed an affidavit of that service. Therefore, Bang was properly served with process.

■ "A court of this state may exercise personal jurisdiction over a person . . . domiciled in . . . this state as to any claim for relief." NDRCivP 4(b)(1). Bang has not contested his legal residence in North Dakota, so he is "domiciled . . . in this state." *See Matter of Estate of Burshiem,* 483 N.W.2d 175, 180 (N.D.1992) ("[D]omicile and legal residence are synonymous. . . ."). Therefore,

the trial court properly exercised personal jurisdiction over Bang.

## 2. *Venue.*

■ Bang argues that, because he resides in Dunn County and Martin resides in Barnes County, the Cass County trial court "erred when it issued a pre-trial order without proper venue or legal jurisdiction, since it was aware that proper notice and demand had been entered into the proceeding to have the action venued in a county of one of the alleged named defendant[']s residence, by the timely filing of the action in a more appropriate county of the state. . . ." We disagree.

As a general rule, subject to the specific exceptions in NDCC ch. 28–04, an "action must be tried in the county in which the defendant or one of the defendants resides at the time of the commencement of the action." NDCC 28–04–05. Varriano argues the Cass County venue was proper because he believed, at the time he began the action, that Martin lived and worked in Cass County. However, even if Martin's true residence was in Barnes County, Bang's argument fails because an action can be tried in an improper venue "unless the defendant, before the time for answering expires, demands in writing that the trial be had in the proper county. . . ." NDCC 28–04–06. Neither Bang nor Martin made a timely written demand under NDCC 28–04–06, and they did not even question venue in the trial court in any manner until after Varriano moved for a default judgment many months after service of process. That was too late.[3]

■ While the trial court did extend the time for Bang and Martin to answer the complaint after Varriano moved for the default judgment in September 1994, that extension did not also extend the time to demand a change of venue. *Gegelman v. Reiersgaard*, 273 N.W.2d 703, 706 (N.D.1979).

Under these circumstances, Cass County was an appropriate venue for trial of this action.

## 3. *Failure to State a Claim.*

■ Bang argues that the trial court erred by not dismissing the complaint because the "[c]omplaint fail[ed] to state a claim against [him] for which any court of competent jurisdiction could grant relief." He contends that his "[f]amily was the most harmed and damaged by the" defamatory passage in the booklet, and that "this must certainly be the first instance in American jurisprudence where an alleged 'victim' of a charge of libel was sued along with the alleged 'author.'" We disagree.

■ A trial court should not dismiss a complaint "under NDRCivP 12(b)(v), for failure to state a claim upon which relief can be granted, 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLean v. Kirby Co.*, 490 N.W.2d 229, 233 (N.D.1992) (quoting *Williams v. State*, 405 N.W.2d 615, 620 (N.D. 1987)); *see also Livingood v. Meece*, 477 N.W.2d 183, 188 (N.D.1991). We view the complaint "in the light most favorable to the plaintiff," *McLean*, 490 N.W.2d at 233, and in light of NDRCivP 8(a)(i) that only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint satisfies the "spirit of Rule 8(a)" if it provides "notice" of the general nature of the "type of claim involved." *Williams v. State*, 405 N.W.2d 615, 621 (N.D. 1987); *see also Gowin v. Hazen Memorial Hospital Ass'n*, 311 N.W.2d 554, 556 (N.D. 1981). Varriano's complaint satisfied these elemental requirements.

Defamation can be either slander or libel. NDCC 14–02–02. Libel is defined by NDCC 14–02–03:

> Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye,

---

**3.** Bang argues that the pleadings he filed in Dunn County constituted a written demand for purposes of NDCC 28–04–06. *See generally Hetletved v. Hansen*, 256 N.W.2d 360 (N.D.1977) (discussing what constitutes "demand in writing" under NDCC 28–04–06). However, we cannot and do not address whether the Dunn County pleadings constituted a proper demand under that statute because, as noted before, those pleadings are not a part of this record on appeal. Nothing in this record reflects a proper demand.

which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

After factual context, Varriano's complaint quoted the allegedly defamatory excerpt, explained that readers would understand it to accuse Varriano of taking a bribe to settle Bang's case, and asserted that it was false. The complaint alleged that Bang and Martin, "working together and in concert, wrote, printed, and caused [the booklet] to be published"; the booklet was widely distributed throughout North Dakota; the statement was made maliciously and with knowledge of its falsity; before the booklet's publication, Varriano had "a good name and reputation in the State of North Dakota as an attorney," and he had "never been guilty, or suspected of being guilty, of any misconduct or malpractice in his professional capacity"; and the statement "injured and prejudiced" Varriano "in his professional reputation," and "potentially" caused him to lose clients and profits.

■ Thus, the complaint sufficiently stated a claim that Bang and Martin had worked together to write, publish, and distribute a false statement about Varriano to third persons, thereby injuring Varriano. If believed, a false statement that Varriano accepted a bribe to settle Bang's case certainly has "a tendency to injure [Varriano] in his occupation." Therefore, under NDCC 14–02–03, the statement was "libel."[4]

Varriano's complaint gave Bang and Martin notice of the nature of Varriano's claim, and also contradicts Bang's claim that he was only a "victim" of, rather than a willing participant in, the defamation. Reading the complaint in the light most favorable to Varriano, and taking its statements as true, the trial court properly denied the motion to dismiss because Varriano adequately plead a claim for relief.

---

**4.** While the complaint does not plead that the defamatory statement was unprivileged, privilege has long been considered a matter of defense. *Rickbeil v. Grafton Deaconess Hospital*, 74 N.D. 525, 542, 23 N.W.2d 247, 256 (N.D.1946); *Roethke v. North Dakota Taxpayers Ass'n*, 72 N.D.

*4. Judicial Bias.*

■ Bang argues that the "claim of bias and prejudice presented by the demand for change of judge," which Judge Eckert denied as untimely on the morning of trial, "clearly raised and preserved an issue that fatally clouded the prior and subsequent actions" of the trial court. We disagree.

When met with this last-minute demand for change of judge, Judge Eckert explained to Martin, "Unfortunately I didn't read your former book, so I didn't know that I was listed," and that nobody had told him about the book. Judge Eckert said, while Martin had written the booklet in 1987, "the first time you called it to my attention is one hour before the trial, despite the fact we had a pre-trial conference even a week, ten days ago." Martin responded that "[i]t is pretty damaging information. I hoped we wouldn't have to bring this out." This exchange shows that Martin intentionally failed to raise the bias claim before trial, and that the eleventh-hour demand for a change of judge was merely a stratagem to delay the trial. No actual bias was demonstrated.

■ While he claimed Judge Eckert was biased for a specific reason, Martin made the demand under NDCC 29–15–21 for peremptory disqualification of a judge. "Under the law, a party seeking to peremptorily disqualify a judge 'must file a timely request before that judge has ruled upon any matter pertaining to the case.'" *Matter of Estate of Ketterling*, 515 N.W.2d 158, 166 (N.D.1994) (quoting *State v. Zueger*, 459 N.W.2d 235, 236 (N.D.1990)). Not only was this demand untimely under NDCC 29–15–21(2), but Judge Eckert had also ruled on many matters "pertaining to the case." We refuse to give any credence to this untimely demand.

*5. Sufficiency of Evidence.*

■ At oral argument, counsel appeared on Bang's behalf and argued that the evi-

---

658, 663, 10 N.W.2d 738, 740–41 (N.D.1943). Even if Varriano had the burden to establish the statement was unprivileged, *Jablonsky v. Klemm*, 377 N.W.2d 560, 565 (N.D.1985), explains that our "liberal pleading rules" do not require him "to allege every element" of his claim.

dence was insufficient for liability because Varriano failed to prove that any third person received the statement in a defamatory manner. Bang's counsel also argued that no evidence supported the jury's verdict that Bang was involved in writing, publishing, or distributing the booklet. In response, Varriano asserted that Bang did not raise these claims to the trial court or in his appellate briefs.

█ We generally do not consider questions raised for the first time at oral argument. *See, e.g., RLI Ins. Co. v. Heling,* 520 N.W.2d 849, 854 (N.D.1994); *McNamara v. North Dakota Dep't of Transp.,* 500 N.W.2d 585, 591 (N.D.1993). Bang's appellate briefs did not raise the issue that Varriano failed to prove that a third person received the statement in a defamatory manner.

█ Moreover, a losing party cannot, after a civil jury trial, "raise the issue of sufficiency of the evidence for the first time" to this Court. *Reisenauer v. Schaefer,* 515 N.W.2d 152, 156–57 n. 6 (N.D.1994); *see also Braun v. Riskedahl,* 150 N.W.2d 577, 581 (N.D.1967), *overruled in part on different grounds by State v. Himmerick,* 499 N.W.2d 568, 571–72 (N.D.1993); *Hultberg v. City of Garrison,* 79 N.D. 356, 358, 56 N.W.2d 319, 320 (N.D.1952). Since Bang did not move for judgment as a matter of law under NDRCivP 50, or for a new trial under NDRCivP 59, we decline to address this question for the first time here.

█ During oral argument, Bang's counsel relied on *Thompson v. Goetz,* 455 N.W.2d 580 (N.D.1990). In *Goetz,* a trial court had entered a default judgment under NDRCivP 55 holding Goetz liable for legal malpractice, fraudulent misrepresentations, and breach of contract for Goetz's failure to answer the complaint. The trial court then scheduled a hearing for Thompsons to prove their damages. While the hearing was pending, Goetz unsuccessfully moved the trial court to vacate the partial default judgment under NDRCivP 60(b). Before the damages hearing, Goetz appealed the denial of his motion to vacate the default judgment to this Court. Although we could not review the merits directly when Goetz's appeal lacked a NDRCivP 54(b) certification, we exercised our supervisory jurisdiction to vacate the judgment. *Id.* at 583; *see Heringer v. Haskell,* 536 N.W.2d 362, 364 (N.D.1995) ("Superintending control over inferior courts is used only to rectify errors and prevent injustice in extraordinary cases where no adequate alternative remedy exists."). Under NDRCivP 55(a)(2), we held that the trial court had erred, as a matter of law, in entering a default judgment when the record lacked any "proof whatsoever" of Goetz's liability for two of the three claims. *Goetz,* 455 N.W.2d at 583–85. We concluded, *id.* at 585–87, that the trial court should have granted Goetz's motion to vacate the default judgment "in the interest of justice," because the motion "was promptly made, was accompanied with an answer setting forth meritorious defenses, and was supported with evidence that Goetz was mentally incapable of facing the Thompsons' claims when the default judgment was entered."

Unlike *Goetz,* however, this case does not involve a Rule 55(a) default judgment because Bang had not "failed to plead or otherwise appear" under that rule. Unlike the plaintiffs in *Goetz,* too, Varriano spent nearly four hours presenting considerable evidence of his claim to the jury through five exhibits and the testimony of six witnesses.

Moreover, because Bang has not attempted, either here or in the trial court, to explain his decision to absent himself from the trial, we do not believe this is an "extraordinary" case requiring us to exercise our supervisory jurisdiction to "prevent injustice." *Heringer,* 536 N.W.2d at 364. While Bang may now regret his decision to absent himself from the trial, his own conduct is the direct and sole cause of any "injustice" that he feels, and he must bear the consequences of his own failure to present his case to the jury.

### 6. Conclusion.

█ Significant portions of Bang's appellate briefs are devoted to arguing about the facts of his case. Yet, Bang had the opportunity to present his version of the facts to the jury for it to weigh, but chose not to do so when he voluntarily left the courtroom just before the trial. We are not a jury that

decides facts, but a court that reviews the proper application of the law in trials. Therefore, we decline to address the factual features of Bang's case on this appeal.

We have considered all of Bang's legal arguments, and conclude they are without merit. Martin also signed the appellants' briefs for this appeal. To the extent that Bang's arguments affect Martin's case, they are equally without merit.

We affirm the jury verdict and the judgments.

VANDE WALLE, C.J., and SANDSTROM, LEVINE and NEUMANN, JJ., concur.