2006 ND 255

**Doris GRIGGS, Plaintiff and Appellant**

v.

**Nathan FISHER and Nicole Fisher, Defendants and Appellees.**

No. 20060180.

Supreme Court of North Dakota.

Dec. 13, 2006.

Janet V. Keymetian (argued) and Irvin B. Nodland (on brief), Irvin B. Nodland, Bismarck, ND, for plaintiff and appellant.

Malcolm H. Brown (argued), Malcolm H. Brown, P.C., Bismarck, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Doris Griggs appeals from a judgment, entered after a jury verdict, dismissing her complaint against Nathan and Nicole Fisher for a rescission of contract. Griggs sought rescission from the contract for sale of certain real and personal property. We conclude Griggs' claim fails because she did not move the trial court for a directed verdict or for a new trial. Accordingly, we affirm.

I

[¶ 2] Griggs, a disabled seventy-five-year-old woman, lives alone on a ranch in Dunn County. She owned and operated the ranch until 2002. In 2002, Griggs became physically unable to work due to a deteriorated hip, so she hired her neighbor, Nathan Fisher, to work on her ranch on a full-time basis. Shortly after his hire, Fisher sought to have Griggs convey the ranch to him. Griggs had a will drafted, leaving the ranch to Fisher, assuming he was still operating and managing the ranch at the time of her death.

[¶ 3] Griggs has suffered from a deteriorating hip since the late 1980's. Griggs had hip stabilizing hardware installed to allow her to continue ranching. In January 2002, the stabilizing hardware was failing. Griggs had surgery to remove the hip hardware, but her surgeons determined her bone structure was too deteriorated to install an artificial hip. Griggs went home from the hospital without a hip and remained in that condition for over a year. In 2003, Griggs found a surgeon willing to perform a hip replacement in Idaho Falls, Idaho. In preparation for her absence and heavy medication, Griggs signed a power of attorney, naming Fisher as her attorney-in-fact. The power of attorney authorized Fisher to interact with the Farm Services Agency ("FSA") on Griggs' behalf.

[¶ 4] Throughout Griggs' recovery, Fisher called her several times, advising her that her mortgage lender, FSA, was about to foreclose on her ranch. Fisher allegedly pressured her to convey the ranch to him before FSA foreclosed. A short time later, Fisher came to Griggs' home with a prepared "Option to Purchase" form, in which Griggs agreed to convey the ranch to Fisher. Fisher agreed to assume her debt of approximately $280,000 and pay her $1,000 per month for the rest of her life, but offered no other payment. Without contest on appeal, Griggs asserts the land was worth significantly more than the debt owed against it. Fisher also brought a prepared document transferring her livestock and machinery to him, subject to any amounts owed to FSA. Griggs signed the documents.

[¶ 5] Griggs experienced complications from her hip surgery which required her to be hospitalized for extended periods of time. She was heavily medicated to control her pain. At trial, Griggs presented uncontroverted expert testimony concerning the side effects of her medications. Both Fisher and hospital staff noted that, at times, Griggs was disorientated, confused, and appeared to be hallucinating. While Griggs was hospitalized, Fisher, his wife, and a FSA agent came to discuss a different agreement to convey the ranch, reducing the $1,000 per month payment to $400 per month. The agreement also terminated the payments if Griggs was admitted into a long-term care facility. In June 2003, Fisher drove Griggs to his lawyer's office to finalize the deed and agreement. Fisher told Griggs his lawyer would not be present. When they arrived, however, Fisher's lawyer was there. The lawyer

asked whether Griggs wanted her lawyer present. When she said no, Fisher's lawyer explained the documents. Griggs complained about some of the language in the deed, but signed the agreements after a change was made.

[¶ 6] At the conclusion of the jury trial, the jury returned a verdict to dismiss Griggs' complaint. Griggs did not move the trial court for a directed verdict under N.D.R.Civ.P. 50 or for a new trial under N.D.R.Civ.P. 59.

## II

[¶ 7] On appeal, Griggs presents no issues of law, arguing only that the jury verdict was contrary to the evidence. Within her argument, she also asserts: (1) Fisher exerted undue influence over her with respect to the transactions; (2) she did not have the capacity to contract; (3) the contracts were unconscionable; (4) Fisher's lawyer took advantage of her; and (5) FSA, her mortgage lender, took advantage of her. At oral argument, Griggs invited this Court to overrule a line of precedent requiring a motion for a new trial or a motion for a judgment as a matter of law in the trial court before we will address whether the evidence to support a jury verdict was sufficient. Fisher argues the case is not appealable because Griggs failed to move the court for a directed verdict or a new trial.

## III

[¶ 8] The dispositive issue in this case is not whether this case is appealable, but rather whether Griggs' issue is reviewable. We decline Griggs' invitation to overrule our well-established rule which requires a motion for a new trial or for a judgment as a matter of law to be made in the trial court. Generally, we will not address issues raised for the first time on appeal. *See Varriano v. Bang*, 541 N.W.2d 707, 713 (N.D.1996). "[A] losing party cannot, after a civil jury trial, 'raise the issue of sufficiency of the evidence for the first time' to this Court." *Id.* (quoting *Reisenauer v. Schaefer*, 515 N.W.2d 152, 156–57 n. 6 (N.D.1994)); *see also Braun v. Riskedahl*, 150 N.W.2d 577, 581 (N.D.1967) (overruled in part on different grounds); *Hultberg v. City of Garrison*, 79 N.D. 356, 358, 56 N.W.2d 319, 320 (N.D.1952). This serves two well-established principles: (1) we no longer decide factual issues de novo, and (2) we do not reweigh conflicts in the evidence or reassess the credibility of witnesses. *Habeck v. MacDonald*, 520 N.W.2d 808, 813 (N.D.1994). The trial court and the jury had the benefit of observing the evidence and witnesses at trial. The trial court is also in the best position to decide a question regarding the sufficiency of the evidence. Therefore, before addressing the issue of sufficiency of the evidence to support a jury verdict, we require a losing party to "move for judgment as a matter of law under [N.D.R.Civ.P.] 50, or for a new trial under [N.D.R.Civ.P.] 59 . . . ." *Varriano*, at 713.

## IV

[¶ 9] Griggs failed to move for judgment as a matter of law or for a new trial. We have long held a party must make a motion in the trial court before we will address the sufficiency of the evidence to support a jury verdict. Therefore, we affirm the judgment entered upon the jury verdict.

[¶ 10] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.