# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2026 ND 58

Larry Alber,                         Plaintiff and Appellant

       v.

Lyle Rodin, and Darin Rodin, d/b/a D&L Farms,     Defendants and Appellees

### No. 20250182

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED.

Opinion of the Court by Fair McEvers, Chief Justice.

David C. Thompson, Grand Forks, ND, for plaintiff and appellant.

Jenna R. Bergman (argued), Minneapolis, MN, and Barton J. Cahill (appeared), Fargo, ND, for defendants and appellees.

**Fair McEvers, Chief Justice.**

[¶1] Larry Alber appeals from a judgment entered after a jury verdict, dismissing his negligence action against the defendants Lyle Rodin and Darin Rodin, dba D&L Farms, and awarding costs and disbursements to the defendants. We hold Alber may not raise for the first time on appeal the issue of whether the jury's verdict was contrary to the greater weight of the evidence, the district court did not commit reversible error when it refused to give the specific duty-of-care jury instructions he proposed, and the court did not abuse its discretion in awarding expert witness fees. We affirm.

I

[¶2] In 2023, Alber commenced this action asserting a single cause of action for negligence against the defendants. His complaint alleged that on or about February 16, 2019, he was working at D&L Farms after Lyle Rodin had asked Alber to conduct a maintenance check of a furnace that was not working in one of the shops at D&L Farms. Alber alleged that to keep the shop warm, the defendants moved a portable heater into the shop, which heater "was powered by propane and was not designed for indoor use creating a confined space that held dangerous amounts of carbon monoxide." Alber alleged that, "unaware of the carbon monoxide in the shop," he worked on the furnace and "sustained a massive carbon monoxide injury resulting in serious and life altering injuries." Alber claimed he suffered severe and disabling injuries "[a]s a direct and proximate result" of the negligent acts or omissions.

[¶3] On January 7 and 8, 2025, the district court held a jury trial. Testimony at trial established Alber is a relative of the defendants and they had an ongoing relationship. Alber performed occasional repair work and mechanical tasks for the defendants at the family farm. Darin Rodin, Alber's nephew, owns the shop situated on the family farm where the defendants and Eugene Wright, a family friend, would perform repairs on various equipment. Sometime before February 16, 2019, the shop's furnace stopped working. Darin Rodin testified that the shop

1

needed heat because of the cold winter weather. Darin Rodin, his son Aaron Rodin, and Eugene Wright all testified that Wright volunteered to bring in his portable propane heater, placed the heater in the shop, and provided the fuel.

[¶4]   Alber learned the furnace heating the shop needed repairs. Alber testified that he went to the shop on February 14, 15, and 16, 2019, to make repairs. Aaron Rodin testified that on February 15, 2019, Lyle Rodin—Darin's father and Aaron's grandfather—turned on the portable heater in the shop to warm up the diesel tractor, which was to be used later in the day. Eugene Wright, Aaron Rodin, and Lyle Rodin were at the shop for several hours that day welding a piece of equipment. Aaron Rodin testified that during the time they were in the shop, the propane heater was running and the garage door and side door were closed. The testimony at trial was that none of the three men—Eugene Wright, Aaron Rodin, or Lyle Rodin—felt sick after their time in the shop or had symptoms of carbon monoxide exposure.

[¶5]   Alber testified that he returned to the defendants' property on February 15, 2019, to work on the furnace again but was unable to fix it at that time and required additional parts, which he picked up the same day. Aaron Rodin testified that the following day, February 16, 2019, Lyle Rodin had been in the shop and again turned on the propane heater to warm up the building so the tractor would start. Alber testified he returned to the shop in the afternoon on February 16, 2019, with the new parts to attempt to repair the furnace. Darin Rodin testified Alber did not call him, knock on his door, or otherwise notify him that Alber arrived to work in the shop that day.

[¶6]   Alber testified the shop was cold upon arrival, the portable heater was not running, and he was at the shop for approximately one hour. Alber testified he recalled leaving the shop to go to his truck, and nothing after that. Darin Rodin testified, however, that he went into the shop later that same afternoon and the propane heater was still running and that he turned it off when he left the shop that afternoon.

[¶7]   Alber testified he experienced symptoms of carbon monoxide poisoning stemming from his February 16, 2019 visit to the defendants' property, and

2

sought various treatment. Alber's wife also testified about Alber's symptoms, that she took him to the hospital emergency room that night, that Alber was put on oxygen at the hospital, and that they were at the hospital for a couple of hours.

[¶8] Alber submitted into evidence a stipulated summary of his medical records and the report of Brian P. Dolan, M.D., M.P.H., his expert medical and causation witness, supporting his claim that he suffered significant carbon monoxide poisoning on February 16, 2019. Dr. Dolan also testified at trial. The defendants' case included testimony from their expert toxicologist, Brent M. Kerger, Ph.D., in addition to his lengthy report, concluding "[i]n sum, none of Mr. Alber's neurological/cognitive, cardiovascular, or pulmonary health problems were caused by the carbon monoxide inhalation event at issue, and all of them have other credible explanations unrelated to his claimed exposure event in February of 2019."

[¶9] The jury returned a verdict finding the defendants were not negligent. After trial, the defendants filed a preliminary statement of verified costs and disbursements, which included $87,798.50 for fees of the expert witnesses. Alber objected, in particular to the fees of Dr. Kerger, the toxicologist who testified at trial. In February 2025, the district court entered an order for judgment dismissing Alber's action and awarding costs to the defendants. The defendants filed an application for the court to award its expert witness fees, with a supporting affidavit and exhibits. Alber supplemented his objections, and defendants filed a reply in support of taxation of costs.

[¶10] In April 2025, the district court held a hearing, after which it issued a memorandum and order approving expert witness fees, which reduced the requested fees for Dr. Kerger to $50,000, awarding defendants a total of $54,250 in expert witness fees. The court thereafter entered an order allowing the costs and disbursements totaling $55,424.65, and judgment was entered. Alber did not make any post-trial motions.

## II

[¶11] Alber argues the jury's verdict finding the defendants were not negligent was contrary to the greater weight of the evidence. He contends this issue can be raised on appeal without making a motion for a new trial in the district court.

[¶12] Generally, we will not address issues raised for the first time on appeal. *McMahon v. Sanford*, 2025 ND 184, ¶ 8, 27 N.W.3d 478; *Mead v. Hatzenbeller*, 2023 ND 248, ¶ 21, 999 N.W.2d 618; *see also Griggs v. Fisher*, 2006 ND 255, ¶ 8, 725 N.W.2d 201; *Varriano v. Bang*, 541 N.W.2d 707, 713 (N.D. 1996). To challenge sufficiency of evidence on appeal in a civil case, this Court has consistently required a motion in the district court:

> A losing party cannot, after a civil jury trial, raise the issue of sufficiency of the evidence for the first time to this Court. This serves two well-established principles: (1) we no longer decide factual issues de novo, and (2) we do not reweigh conflicts in the evidence or reassess the credibility of witnesses. The trial court and the jury had the benefit of observing the evidence and witnesses at trial. The trial court is also in the best position to decide a question regarding the sufficiency of the evidence. Therefore, before addressing the issue of sufficiency of the evidence to support a jury verdict, we require a losing party to move for judgment as a matter of law under N.D.R.Civ.P. 50, or for a new trial under N.D.R.Civ.P. 59.

*Juliuson v. Johnson, Tr. of Barbara R. Johnson Revocable Tr.*, 2025 ND 139, ¶ 11, 24 N.W.3d 385 (quoting *Griggs*, ¶ 8 (cleaned up)); *see also Varriano*, 541 N.W.2d at 713; *Reisenauer v. Schaefer*, 515 N.W.2d 152, 156-57 n.6 (N.D. 1994); *Braun v. Riskedahl*, 150 N.W.2d 577, 581 (N.D. 1967), overruled in part on different grounds by *State v. Himmerick*, 499 N.W.2d 568, 571-72 (N.D. 1993); *Hultberg v. City of Garrison*, 56 N.W.2d 319, 320 (N.D. 1952). In *Griggs*, ¶¶ 6-7, the jury returned a verdict to dismiss the complaint, and Griggs did not make a motion in the trial court, arguing on appeal "only that the jury verdict was contrary to the evidence." This Court held the "dispositive issue" was whether Griggs's issue was reviewable and declined the "invitation to overrule our well-established rule which requires a motion for a new trial or for a judgment as a matter of law to be made in the trial court." *Id.* ¶ 8.

4

[¶13] We have said there is a difference between challenges to whether a jury verdict is against the "weight of the evidence" or is supported by "insufficient evidence." *Juliuson*, 2025 ND 139, ¶ 8. "For claims that the jury's verdict was against the manifest weight of the evidence, this Court has stated '[t]he discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside." *Id.* (quoting *Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D. 1977) (cleaned up)).

[¶14] Relying on a criminal case, *State v. Thomas*, 2020 ND 30, ¶ 16, 938 N.W.2d 897 (citing *State v. Kopp*, 419 N.W.2d 169, 172 n.2 (N.D. 1988)), Alber contends the issue of whether a verdict is contrary to the "greater weight of the evidence" may be raised on appeal from the judgment in this civil case without making a new trial motion in the district court. In *Thomas*, however, we addressed a claim the district court had abused its sentencing discretion, although not raised below, "because an objection is unnecessary to preserve a claim of illegal sentence imposed in a criminal judgment from which an appeal may be immediately taken." *Id.* In another criminal case, *Himmerick*, 499 N.W.2d at 571-72, we explained the "significant difference between [challenges based on] weight and sufficiency" and that "[w]hen a party challenges the weight of the evidence, that party must, *by necessity*, make a motion to the trial judge to adequately raise the issue and preserve it for appeal." (Emphasis added.) Because "[w]eight of the evidence is a credibility question involving evidentiary events unfolding at trial," we said "[t]he trial judge is in the best position to review those events." *Id.* at 572. Alber's reliance on *Thomas*, therefore, is unavailing.

[¶15] Alber also relies on cases in his reply brief from other federal and state courts discussing an appellate court's discretion to address arguments not raised in the district court, particularly when the interest of "substantial justice" is at stake or to prevent a "manifest injustice." *See, e.g.*, *State v. Whitman*, 2013 ND 183, ¶¶ 13-14, 838 N.W.2d 401 (applying N.D.R.App.P. 2 to avoid manifest injustice). This would also correspond with a "harmless error" analysis under N.D.R.Civ.P. 61, which provides:

*Unless justice requires otherwise*, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, *the court must disregard all errors and defects that do not affect any party's substantial rights*.

(Emphasis added.)

[¶16] On this record, consistent with our long-established precedent, we decline Alber's invitation to overrule our rule requiring a post-trial motion be made in the district court to preserve this issue. We conclude Alber may not raise for the first time on appeal the issue of whether the jury's verdict was contrary to the greater weight of the evidence. Because this issue was not raised below, the issue was not preserved for appeal.

III

[¶17] Alber argues the district court's refusal to give his specific proposed duty-of-care jury instructions constitutes reversible error.

[¶18] "On appeal, we review jury instructions as a whole to determine if they fairly and adequately advise the jury of the law." *Travelers Cas. Ins. Co. of Am. v. Williams Co. Const., Inc.*, 2014 ND 160, ¶ 11, 851 N.W.2d 164 (quoting *Ebach v. Ralston*, 510 N.W.2d 604, 608 (N.D. 1994)). Our standard for reviewing jury instructions is well-established:

Jury instructions should fairly inform the jury of the law applicable to the case. They should also fairly cover the claims made by both sides of the case. Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.

. . . .

When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. The trial process is still more art than science. Only scant evidence may be needed to support a jury instruction. Where there is no evidence to

> support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper.

*Cartier v. Nw. Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866 (quoting *Harfield v. Tate*, 1999 ND 166, ¶ 6, 598 N.W.2d 840). "[W]hile a trial court may properly refuse a requested jury instruction not applicable to the evidence, a party is entitled to a jury instruction on a valid applicable theory if there is some evidence to support it." *Travelers*, ¶ 12."However, a trial court need not give instructions in the specific language requested where the substance thereof is already fully and fairly covered by another charge." *Id.* "The instructions should fairly cover the claims made by both sides of the case." *Id.* "In evaluating whether the district court abused its discretion in instructing the jury, we will first determine whether the district court committed error in its instruction, and then, if so, whether that error was harmless." *Rittenour v. Gibson*, 2003 ND 14, ¶ 15, 656 N.W.2d 691; *see also* N.D.R.Civ.P. 61 (providing harmless-error standard for civil cases).

[¶19] Alber argues the district court committed reversible error by rejecting the five additional requested instructions related to the duty of care he proposed to the court, regarding: 1. Owner or occupant duty to invitees or business visitors; 2. Compliance with a government regulation or statute is a minimum standard of care; 3. Violation of an applicable federal regulation is evidence of negligence; 4. 29 C.F.R. § 1926.154, Temporary heating devices; and 5. Ignorance of regulations is not a valid defense, and violation of a regulatory duty is evidence of negligence.

[¶20] Alber argues the district court refused to give any of his five requested jury instructions after a "short" jury instruction conference. He contends his proposed instructions were sufficiently annotated with proffered legal authorities justifying them.

A

[¶21] Regarding his additional requested jury instruction no. 1, Alber proposed the following:

7

**Owner or Occupant Duty to Invitees or Business Visitors**

An owner or occupant of premises, although not an insurer of the safe condition of business visitors, is bound to exercise ordinary or reasonable care to keep them in a safe condition for those who come upon them by the owner's express or implied invitation, and such duty of reasonable care encompasses the duty of making the premises safe as to dangerous conditions or activities upon the premises of which he knows, or of which he ought to have knowledge in the exercise of reasonable care. An owner or occupant of land who invites or allows another on his premises owes that person an affirmative duty to protect him against dangers of which the landowner knows, or dangers which the landowner ought to discover with reasonable care. And while the owner or occupant of the premises is generally not liable to invitees or business visitors for physical harm caused to them by a condition on the land if the danger posed by the condition is obvious or known to the invitees or business visitors, the owner or occupant of the premises nevertheless is liable to an invitee or business guest for harm caused by a known or obvious condition if the possessor should have anticipated the harm despite the invitees' or business guest's such knowledge or obviousness of the condition.

In the district court and on appeal, Alber only cites as authority for this instruction *Zuercher v. N. Jobbing Co.*, 66 N.W.2d 892, 896-99 (Minn. 1954); *Gilmore v. Walgreen Co.*, 759 N.W.2d 433 (Minn. Ct. App. 2009); and the Restatement (Second) of Torts § 343A (1965). *But see Senogles v. Carlson*, 902 N.W.2d 38, 42 (Minn. 2017) ("A landowner generally has a continuing duty to use reasonable care for the safety of all entrants. 'Entrants' refers to both invitees and licensees." (cleaned up)); *Peterson v. Balach*, 199 N.W.2d 639, 642, 647 (Minn. 1972) (abolishing traditional distinctions governing licensees and invitees and determining landowner's liability under ordinary standards of negligence). As in the district court, Alber has provided no citation or discussion of any relevant North Dakota case law on appeal.

[¶22] At the jury instruction conference, while Alber's counsel stated the "need [for] an instruction in this case about the duty of the landowner, vis-à-vis, people coming onto the property," the district court expressed its concern the requested instruction was based on Minnesota law, and there was not "a standard

instruction in North Dakota on invitees." Alber's counsel responded that "[t]his is basic law" and "[o]ur Supreme Court routinely follows Minnesota Supreme Court decisions more frequently than other jurisdictions." Rather than "dividing between trespassers, invitees, and licensees," the court decided to use the "general negligence instruction"—based on North Dakota Pattern Jury Instruction - Civil, N.D.J.I. C-2.05—which both Alber and the defendants proposed to the court in their respective proposed jury instructions. *See* N.D.R.Civ.P. 51(a)(3) ("A party may request a North Dakota pattern jury instruction by reference to the instruction number."). The court explained:

> THE COURT: I think that the [negligence] instruction covers it. The duty to use care is based upon knowledge of danger. The care that a person must exercise in a particular situation is in proportion to the degree that danger of injury to oneself or others in the act that he performs, measured by references to circumstances of danger known to one at the time, under reasonable care under the circumstances. Any specialized knowledge, facts, or skills.
>
> I think that encompasses if you know people are coming onto your property, the area that they're coming onto, you do have a duty to acknowledge things about warning and making safe. That can be argued, and certainly the jury could find it under that instruction. I am leery of incorporating a Minnesota case law as my instruction. I just find it problematic.

[¶23] "[P]remises liability is a branch of negligence law with different elements that define a property owner or occupant's duty with respect to those who enter the property." *See Morales v. Weatherford U.S., L.P.*, 2024 ND 155, ¶ 7, 10 N.W.3d 551 (citing *Reyes v. Brookshire Grocery Co.*, 578 S.W.3d 588, 591 (Tex. App. 2019)). Under North Dakota premises liability law, "general negligence principles govern a landowner's duty of care to persons who are not trespassers on the premises." *Schmidt v. Gateway Cmty. Fellowship*, 2010 ND 69, ¶ 8, 781 N.W.2d 200 (citing *O'Leary v. Coenen*, 251 N.W.2d 746, 748-52 (N.D. 1977) (abandoning common law categories of licensee and invitee for premises liability and retaining standard that owner owes no duty to trespasser except to refrain from harming trespasser in willful and wanton manner)); s*ee also Wotzka v. Minndakota Ltd. P'ship*, 2013 ND 99, ¶¶ 9, 12-13, 831 N.W.2d 722 (citing and applying

Restatement (Second) of Torts § 343A (1965)); *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶¶ 16-22, 676 N.W.2d 763 (citing section 343A).

[¶24] We have also explained, however, the law concerning duty for "ordinary negligence" is different from the law concerning duty for "premises liability." *Morales*, 2024 ND 155, ¶ 5. "[I]n a premises liability case the defendant is alleged to have 'maintained a dangerous condition,' whereas in an ordinary liability case the defendant is alleged to have caused the dangerous condition." *Id.* ¶ 6 (quoting *Hutson v. Pate*, 216 N.E.3d 1085, 1093 (Ill. App. Ct. 2022)).

> The lines between negligent activity and premises liability are sometimes unclear, since almost every artificial condition can be said to have been created by an activity. Nevertheless, a cause of action for premises liability is different from one for negligent activity. Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. Negligence in the context of a negligent activity claim means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have done or not done. Negligence in the premises liability context generally means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about. In short, unlike a negligent activity claim, a premises defect claim is based on the property itself being unsafe.

*Id.* ¶ 7 (quoting *City of El Paso v. Collins*, 440 S.W.3d 879, 887-88 (Tex. App. 2013) (cleaned up)). "[T]he nature of the plaintiff's claim must be determined from the complaint." *Id.*

[¶25] Here, the district court rejected Alber's requested instruction no. 1—addressing an owner's duty to invitees or business visitors—because it was based on Minnesota law and used abandoned common-law categories, e.g., "invitees" and "business visitors." *See O'Leary*, 251 N.W.2d at 751. The court concluded the general negligence instruction, requested by both Alber and the defendants, "cover[ed] it."

[¶26] We conclude Alber's argument on appeal is conclusory. It does not explain how the requested instruction citing Minnesota law properly applies in this case or is superior to the North Dakota pattern jury instruction on duty of the owner, occupant, or lessor of the premises—instructions requested and denied by the district court but not argued on appeal. Alber's brief provides no citations to or analysis of relevant North Dakota law, particularly regarding the differences in the respective duties for ordinary negligence and for premises liability. *See Montana-Dakota Utils. Co. v. Behm*, 2019 ND 139, ¶ 19, 927 N.W.2d 865 ("We do not address inadequately briefed issues."); *Buchholz v. Barnes Cnty. Water Bd.*, 2008 ND 158, ¶ 16, 755 N.W.2d 472 ("Judges, whether trial or appellate, are not ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position."). We conclude Alber failed to establish the district court committed reversible error by refusing to instruct the jury based on his requested jury instruction no. 1.

B

[¶27] Alber's remaining four additional requested instructions related to 29 C.F.R. § 1926.154, addressing temporary heating devices.

[¶28] Here, at the jury instruction conference, the district court considered the requested instructions but declined to give them, explaining in part:

> THE COURT: And I did consider your ones about the regulation. The problem I would have with that is I have no evidence that would show that regulation was applicable, of what the standard of ventilation was that would require that—that would say they were in violation of the statute. Was the ventilation adequate?
> . . . .
> . . . I mean, without any information about how much ventilation was required for this type of blower, I can't say if it's adequate or not adequate. I don't have any information that would allow me to give an instruction of law that they violated this regulation that I have no proof that they didn't have adequate ventilation.

The court held the requested instructions were not applicable under the evidence presented.

11

[¶29] Again, Alber's argument on this issue on appeal is conclusory and does not explain how the federal regulation applies to the defendants on facts of this case or address the district court's ruling.

[¶30] In his reply brief, Alber argues, among other things, that his proposed jury instructions "were actually invited" by the district court's "negligence" instruction and that the failure to give his proposed instructions left the negligence instruction "incomplete."

[¶31] Alber did not raise or argue the issue the negligence instruction was "incomplete" in his main appellant's brief. *See Koehly v. Levi*, 2016 ND 202, ¶ 9, 886 N.W.2d 689 ("We will not address issues raised for the first time in a reply brief, because the reply brief is limited to issues raised in the appellee's brief."). We conclude Alber failed to establish that the district court committed reversible error by refusing to instruct the jury based on his additional requested jury instruction nos. 2, 3, 4, and 5.

[¶32] On this record, reviewing the jury instructions as a whole, we conclude the district court did not abuse its discretion in instructing the jury.

IV

[¶33] Alber challenges the district court's award of the expert witness fees for the defendants' toxicology expert.

[¶34] Under N.D.C.C. § 28-26-06(5), the district court has "sole discretion" to award expert witness fees that are reasonable plus actual expenses. This subsection provides:

> The fees of expert witnesses. The fees must be reasonable fees as determined by the court, plus actual expenses. The following are nevertheless in the sole discretion of the trial court:
> a. The number of expert witnesses who are allowed fees or expenses;
> b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid the allowed expert witnesses.

[¶35] "The allowance of disbursements under the statutes lies within the discretion of the district court, which is in a better position to determine the reasonableness and necessity of the disbursements sought by the prevailing party, and the district court's decision will be overturned only if an abuse of discretion is shown." *Broten v. Carter*, 2019 ND 268, ¶ 18, 935 N.W.2d 654 (cleaned up). We have also provided seven non-exclusive factors to consider when awarding reasonable expert witness fees. *Wahl v. N. Improvement Co.*, 2011 ND 146, ¶ 18, 800 N.W.2d 700 (quoting 98 C.J.S. *Witnesses* § 86 (2002), listing factors). A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner; when its decision is not the product of a rational mental process leading to a reasoned determination; or when it misapplies or misinterprets the law. *Broten*, ¶ 18.

A

[¶36] Alber argues the defendants may not claim the expert witness fees of a nonphysician as taxable costs. He argues the district court erred in allowing the defendants' expert, Dr. Kerger, a toxicologist but not a medical doctor, to testify at trial and present "specific medical causation testimony," despite his objection and citation of authority. *See Constantine v. Lenox Instrument Co., Inc.*, 325 A.3d 725, 743-46 (Pa. Super. Ct. 2024). Alber contends Dr. Kerger should not have been permitted to testify on medical causation for Alber's claimed injuries.

[¶37] The defendants, however, respond the district court permitted Dr. Kerger to testify; and even if it were error to have allowed certain portions of Dr. Kerger's testimony, he was still a qualified expert toxicologist and qualified to provide testimony at trial. The defendants contend the court did not abuse its discretion in its award of Dr. Kerger's fees because the court substantially reduced them after a hearing.

[¶38] Here, the district court found the requested fees of $83,548.50 for Dr. Kerger's expert services were excessive and reduced the amount, finding the

"reasonable amount allowable" for Dr. Kerger's services was $50,000. The court explained:

> Dr. Kerger's report is exhaustive, but . . . much of it is reprinted from research studies and other materials on the sources, causes, and effects of carbon monoxide exposure. . . . Exponent billed for a total of 203 hours of work: Kerger billed approximately 115 hours at rates from $450-500 per hour; the engineer and scientist billed a total of about 84 hours at rates from $315-350 per hour. Without getting into an invoice-by-invoice, line-item review, the court came away from its review with a distinct impression that the billing substantially exceeds the amount reasonably necessary for the defendants to meet the plaintiff's claims.

[¶39] While a "line-item review" may have aided in deciding whether the district court abused its discretion, the court's determination of the amount of expert witness fees is in its "sole discretion." N.D.C.C. § 28-26-06(5). Even if a portion of Dr. Kerger's testimony should not have been admitted, this Court has upheld a district court's award of fees for non-testifying expert witnesses. *See Broten*, 2019 ND 268, ¶¶ 20-21.

[¶40] We conclude the district court's award of expert witness fees for the defendants' toxicology expert was not arbitrary, unreasonable, or unconscionable; its decision was the product of a rational mental process leading to a reasoned determination; and the court did not misapply or misinterpret the law. The court did not abuse its discretion in its awarding Dr. Kerger's fees.

B

[¶41] Alber argues that the "way-out-of-proportion" nature of the expert witness fees the district court awarded in this case violates the "American Rule," that parties to civil litigation bear their own litigation costs and attorney's fees. He also relies on *Hometown Living, LLC v. R.H. Rogers & Assocs., P.C.*, No. 3:17-cv-00249, 2023 WL 4290166, at *3 (D.N.D. May 12, 2023), a federal district court decision applying a federal statute providing for standard per diem fees allowable.

14

[¶42] This Court has discussed the "American Rule" with regard to awarding attorney's fees when no statute or contract specifically authorizes such an award. *See, e.g.*, *Cheetah Props. 1, LLC v. Panther Pressure Testers, Inc.*, 2016 ND 102, ¶ 19, 879 N.W.2d 423 ("Absent statutory or contractual authority, the American Rule assumes parties to a lawsuit bear their own attorney fees." (quoting *H-T Enters. v. Antelope Creek Bison Ranch*, 2005 ND 71, ¶ 15, 694 N.W.2d 691)). As discussed, however, N.D.C.C. § 28-26-06(5) governs and provides the district court with the "sole discretion" to award reasonable expert fees plus actual costs. This statute does not set a specific cap or per diem amount. Alber's arguments to the contrary are unavailing.

V

[¶43] We have considered the remaining arguments and conclude they are either unnecessary to our decision or are without merit. We affirm the judgment.

[¶44] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr